UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAI, *Plaintiff*, v. TRANSPORTATION SECURITY ADMINISTRATION, *Defendant*. | Civil Action No. 14-403-RDM |

**PLAINTIFF'S COUNTERSTATEMENT AND STAEMENT OF ADDITIONAL FACTS SUBMITTED IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S OPPOSITION**

Pursuant to Local Civil Rule 7(h), Plaintiff Sai submits this counterstatement and statement of additional facts submitted in opposition to Defendant's motion for summary judgment and in support of Plaintiff's opposition thereto.

**I.  Offices Searched for BOS and SFO Requests and Re-Requests**

1. The Court found that the BOS and SFO Requests "can only reasonably be construed to encompass FOIA processing records" because they sought "all documents and communication[s] related to or responding to" the requests "whether internal or external," and that "TSA offers no meaningful explanation for why it did not search its FOIA Branch for records." Dkt. 162 at 30.

**Plaintiff's Response:**  Agreed.

2. As an initial matter with respect to both the BOS Request and the SFO Request, the cut-off date for responsive records is the date that the search commences.  The FOIA Branch did not believe that any responsive records to the BOS and SFO Requests (apart from direct communications with Plaintiff, which Plaintiff already possessed) would have been generated within the FOIA Branch prior to the commencement of the search.  Therefore, the FOIA Branch made the reasonable determination not to task itself with searching for responsive records.

**Plaintiff's Response:** Disputed. Plaintiff disputes that no responsive records to the BOS and SFO Requests would have been generated within the FOIA Branch prior to the commencement of the search. Plaintiff also disputes that the FOIA Branch's determination not to task itself with searching for responsive records was reasonable.

    3.    Further, with response to the BOS Request, the original request was a three-page single-spaced document that proclaimed itself to be not only a FOIA request, but also an "evidence preservation demand" with no obvious delineation between the two. *See* Dkt. 99-3 at Exh. A. The FOIA Branch originally determined that the request was not reasonably described and was unreasonably burdensome. *See* Dkt. 99-3 at 4 (¶ 9). On February 5, 2013, TSA informed Plaintiff via letter that the request was not reasonably described and requested that Plaintiff provide as much information as possible to enable the FOIA Branch to locate the records being sought. *See id.* at ¶ 9, n.7.

**Plaintiff's Response:** Disputed. Plaintiff disputes that the original requests to the FOIA Branch were not reasonably described and unreasonably burdensome.

    4.    When Plaintiff responded via email, Plaintiff stated that Plaintiff had never applied for employment with TSA, borne a government credential, or received a citation or fine from TSA, and, rather than narrowing the request, Plaintiff expanded it to include all records related to two prior screening experiences at New York's LaGuardia Airport (LGA) and Chicago's O'Hare International Airport (ORD). *See* Dkt. 99-3 at 4 (¶ 10), 55 (McCoy Decl. Exh. B). The clarifying email did not mention anything about seeking records "related to responding to the requests." *See id.* at 55 (McCoy Decl. Exh. B). Instead, it focused on "harassment by TSA agents" that Plaintiff had allegedly experienced at airport checkpoints and sought "all records related to [those] event[s]" including "any incident reports, police reports, or the like" as well as "a clear statement about what corrective measures the TSA takes when TSA agents simply refuse to obey clearly established policy." *Id.* Based on this response, TSA re-opened the BOS Request, understanding Plaintiff to

2

be seeking records – "including incident reports, police reports, and the like" – related to screening experiences at BOS, LGA, and ORD. *See* Dkt. 99-3 at 4 (¶ 11).

**Plaintiff's Response:** Disputed.

5. Because the email Plaintiff sent in response to the NRD (i.e., "not reasonably defined") letter did not make any mention of seeking records about responding to the BOS Request itself and the overall substance of the email focused on seeking records related to screening experiences, the FOIA Branch did not interpret that email as clarification that the request was one seeking records about responding to the BOS Request and therefore did not task itself with a search. Instead, the FOIA Branch reasonably interpreted the request to be one seeking records related to the screening experiences Plaintiff had specified and therefore tasked all offices determined likely to have responsive records including: BOS, ORD, LGA, the Transportation Security Operations Center (TSOC), the Office of Law Enforcement/Federal Air Marshal Service (OLE/FAMS), and the TSA Contact Center (TCC). *See* Dkt. 99-3 at 5-8 (¶¶ 13-23).

**Plaintiff's Response:** Disputed. Plaintiff disputes Defendant's characterization that the FOIA Branch's interpretation of Plaintiff's request was reasonable.

6. With respect to the SFO Request, the original request was a three-page single-spaced document identifying itself as "simultaneously" a "FOIA request," a "CPRA request," "a request under the Privacy Act," and "an evidence preservation demand." *See* Dkt. 99-3 at 85 (McCoy Decl. Exh. L). The FOIA Branch originally determined that a portion of that request, including the portion seeking "any and all documents and communications related to responding to this request, whether internal or external," was too broad in scope or did not specifically identify the records Plaintiff was seeking. *See* Dkt. 99-3 at 19 (¶ 60), 89-90 (McCoy Decl. Exh. M). TSA requested that Plaintiff provide a reasonable description of the records Plaintiff was seeking. *See id.* TSA never received a response from Plaintiff. *See* Dkt. 99-3 at 19 (¶ 60).

3

**Plaintiff's Response:**  Disputed.  Plaintiff disputes that the SFO Request was too broad in scope or did not specifically identify the records Plaintiff was seeking.

7. In the absence of any response from Plaintiff to clarify the portion of the request that was determined to be overly broad and not reasonably described (including the portion seeking records "related to responding to this request"), the FOIA Branch undertook a search reasonably calculated to locate records responsive to those portions of the SFO Request that were described with sufficient specificity, including a search for records related to Plaintiff's March 1, 2013 screening at San Francisco International Airport (SFO); records related to complaints against six TSA and Covenant Aviation Security (CAS) employees; and records related to similar complaints against any TSA, CAS or SFO employee.  The FOIA Branch tasked the offices determined likely to have such responsive records, which would have been created in connection with the underlying incident itself, rather than records created in the collateral effort to gather those records about the underlying incident.  The only offices that were reasonably likely to have records about the underlying incidents themselves included SFO, TCC, and the Disability Branch (DB).  *See* Dkt. 99-3 at 20-21 (¶¶ 62-69).

**Plaintiff's Response:**  Disputed.  Plaintiff disputes that the request was overly broad and not reasonably described.  Plaintiff also disputes that the FOIA Branch's search was reasonably calculated to locate records responsive to the SFO Request.  Finally, Plaintiff disputes that the only offices reasonably likely to have records responsive to the request were those offices listed by the TSA.

8. In the correspondence from Plaintiff following the interim release of records responsive to the SFO Request (in which Plaintiff raised many issues and reiterated many aspects of Plaintiff's original request), Plaintiff made no mention of seeking records "related to responding this request."  *See* Dkt. 99-3 at 95-97 (McCoy Decl. Exh. O).

**Plaintiff's Response:**  Disputed. Plaintiff disputes that its initial request did not seek records related to responding to the request.

9. Because Plaintiff failed to respond to the FOIA Branch's initial determination that a portion of the SFO Request, including the portion seeking records "related to responding to this request," was not reasonably described, and because Plaintiff made no further mention of that portion of the request in subsequent correspondence, the FOIA Branch did not interpret the request as one seeking records related to "responding to this request." Rather, the FOIA Branch interpreted the request to be one seeking those records that were reasonably described – pertaining to Plaintiff's screening at SFO and complaints about TSA, CAS, and SFO employees – and processed the request accordingly.

**Plaintiff's Response:** Disputed. Plaintiff disputes that the SFO Request was not reasonably described. Plaintiff also disputes that it was reasonable for the FOIA Branch to not interpret the request as one seeking records related to "responding to this request."

10. With respect to the BOS and SFO Re-Requests, these requests did not include any language seeking records "related to responding to [the requests], whether external or internal" at all. *See* Dkt. 28-3 at 11-12. Since such language did not appear in the BOS and SFO Re-Requests, the FOIA Branch did not interpret those requests to be seeking records related to responding to the requests, and therefore did not task itself with a search. Rather, after attempts to clarify what records Plaintiff was seeking, the FOIA Branch interpreted these requests as seeking records related to the BOS screening incident on January 21, 2013, and the SFO screening incident on March 1, 2013, from a timeframe that post-dated the prior searches conducted with respect to those two incidents. *See* Dkt. 99-3 at 43-45 (¶¶ 123-131).

**Plaintiff's Response:** Disputed.

11. The Court held that it was not convinced that TSA had adequately justified its failure to task its Office of Legislative Affairs (OLA), Office of the Executive Secretariat (Exec Sec), and Office of Chief Counsel (OCC) to search for records responsive to the BOS and SFO Requests and Re-Requests in light of certain released records suggesting that those offices could

5

have possessed responsive records. *See* Dkt. 162 at 30-31. The released records referenced by the Court were the following:

      a.      OLA:  Dkt. 145-2 at 123;

      b.      Exec Sec:  Dkt. 145-2 at 61, 123, 143; and

      c.      OCC:  Dkt. 144-3 at 58-62, 73.

*See* Dkt. 162 at 30, 31. All of the released pages referenced by the Court were released in response to the SFO Request. *See* Dkt. 99-3 at 102-120 (McCoy Decl. Exh. Q).

**Plaintiff's Response:** Agreed.

12. As previously explained, a portion of the SFO Request was determined to be overly broad and not reasonably described. Despite requesting a reasonable description from Plaintiff, TSA never received a reasonable description of that portion of the request, notwithstanding Plaintiff's engagement about other aspects of the request. Accordingly, the FOIA Branch set out in good faith to respond to those aspects of the request that were reasonably described, namely: records related to Plaintiff's screening at SFO on March 1, 2013, including "all surveillance video, reports, notes, correspondence, communications, and other documents relating to the incident;" "any and all reports related to the event, such as TSA Incident Reports or the like;" as well as any and all records of Plaintiff's x-ray baggage screening. *See* Dkt. 99-3 at 85 (McCoy Decl. Exh. L).

**Plaintiff's Response:** Disputed. Plaintiff disputes Defendant's statement that the SFO Request was overly broad and not reasonably described.

13. In the course of searching for records responsive to the SFO Request, the FOIA Branch tasked the Disability Branch (DB). The DB located records responsive to the SFO Request as well as many records that were related to Plaintiff generally, but were not responsive to the SFO Request. Despite their non-responsiveness to the reasonably described items in the SFO Request,

the FOIA Branch processed and released these records along with those that were responsive. Among these non-responsive released records were the pages referenced by the Court.

**Plaintiff's Response:** Disputed.

14. With respect to the referenced pages regarding OLA, those pages pertain to correspondence from Speaker Pelosi's office regarding the administrative processing of Plaintiff's SFO and BOS administrative complaints pursuant to the Rehabilitation Act ("Section 504 complaints"). *See* Dkt. 145-2 at 115-123. Since the administrative processing of Plaintiff's Section 504 complaints were outside the scope of the SFO Request, there was no reason to believe that the existence of these pages suggested that other *responsive* documents would be held in the possession of OLA. Accordingly, the FOIA Branch properly did not task OLA separately.

**Plaintiff's Response:** Disputed. Plaintiff disputes Defendant's statement that there would not be other responsive documents held in the possession of OLA. Plaintiff also disputes that is was proper for the FOIA Branch to not task OLA separately.

15. Similarly, with respect to the referenced pages regarding Exec Sec, those pages pertain to emails between DB and Exec Sec concerning correspondence with Speaker Pelosi's office regarding the administrative processing of Plaintiff's Section 504 complaints, *see* Dkt. 145-2 at 61, 143, and emails between OLA and Exec Sec concerning correspondence with Speaker Pelosi's office regarding the administrative processing of Plaintiff's Section 504 complaints, *see id.* at 123. Again, since the administrative processing of Plaintiff's Section 504 complaints was outside the scope of the SFO Request, there was no reason to believe that the existence of these pages suggested that other *responsive* documents would be held in the possession of Exec Sec. Therefore, the FOIA Branch properly did not task Exec Sec separately.

**Plaintiff's Response:** Disputed. Plaintiff disputes Defendant's statement that there was no reason to believe that the existence of certain pages suggested that other responsive documents would be held in the possession of Exec Sec. Plaintiff also disputes that it was proper for the FOIA Branch to not task Exec Sec separately.

16. Likewise, with respect to the referenced pages regarding OCC, some of those pages pertain to discussions between DB and OCC regarding a meeting to discuss the administrative processing of Plaintiff's Section 504 complaints. *See* Dkt. 144-3 at 58-62. As explained above, the administrative processing of Plaintiff's Section 504 complaints was outside the scope of the SFO Request, therefore there is no reason to believe that the existence of these pages suggested that other *responsive* documents regarding those reasonably described portions of the SFO request would be held in the possession of OCC. Accordingly, the FOIA Branch properly did not task OCC separately on the basis of those pages.

**Plaintiff's Response:** Disputed. Plaintiff disputes Defendant's statement that there was no reason to believe that the existence of certain pages suggested that other responsive documents would be held in the possession of OCC. Plaintiff also disputes that it was proper for the FOIA Branch to not task OCC separately.

17. None of these above-referenced pages regarding OLA, Exec Sec or OCC (which were released in connection with the SFO Request despite being non-responsive to the reasonably described portions of that request) were responsive to the BOS Request, BOS Re-Request, or SFO Re-Request because none of those requests sought records related to the administrative processing of Plaintiff's Section 504 complaints either. *See* Dkt. 99-3 at 50-52 (McCoy Decl. Exh. A), 85-87 (Exh. L); Dkt. 28-3 at 11-12.

**Plaintiff's Response:** Disputed.

18. With respect to the one remaining referenced page regarding OCC, *see* Dkt. 144-3 at 73, that page shows an email from an OCC paralegal seeking information from DB regarding the BOS incident. Since records related to the BOS incident were outside the scope of the SFO Request and therefore non-responsive, and since this record was located during the course of the search for records responsive to the SFO Request, the FOIA Branch had no reason to believe that OCC would have other records responsive to the SFO Request based on a single email inquiry

8

pertaining to the BOS incident.  Therefore, the FOIA Branch did not task OCC with a search for records responsive to the SFO Request and, for the same reason, did not task OCC with a search for the SFO Re-Request.

**Plaintiff's Response:**  Disputed.  Plaintiff disputes Defendant's statement that the FOIA Branch had no reason to believe that OCC would have other records responsive to the SFO Request.

19.    Further, even if this page, Dkt. 144-3 at 73, had been located in the course of the search for records responsive to the BOS Request, the FOIA Branch would not have had reason to believe that OCC would possess other responsive documents.  The page shows that the OCC paralegal was seeking the "complete files" that had been sent from a TSA employee at BOS.  *See id.* at 73-74.  Since the FOIA Branch had already tasked and re-tasked BOS, *see* Dkt. 99-3 at 6 (¶ 15), 7 (¶ 21), there was no reason for the FOIA Branch to believe that OCC would possess separate, responsive records regarding the BOS incident that had not already been searched for and located by the BOS program office pursuant to its tasking.  Moreover, FOIA Branch records show that the same TSA employee at BOS responsible for sending the "complete files" had also been the point of contact for the FOIA Branch's tasking and re-tasking of the BOS program office.  Therefore, even if this page had been located in the search for the BOS Request, the FOIA Branch would not have tasked OCC for the BOS Request or Re-request on the basis of this page because the FOIA Branch reasonably believed that all files likely to contain responsive, non-duplicative material had already been searched.

**Plaintiff's Response:**  Disputed.  Plaintiff disputes Defendant's statement that there was no reason for the FOIA Branch to believe that OCC would possess responsive records regarding the BOS incident.  Plaintiff also disputes that it was reasonable for the FOIA Branch to believe that all files likely to contain responsive, non-duplicative material had already been searched.

**II.    Timeframe of Searches for BOS and SFO Requests and Re-Requests**

20.    For each of the four requests at issue, below are the dates that the relevant program offices were tasked and the dates that their signed responses were submitted to the FOIA Branch.

9

**Plaintiff's Response:** Agreed.

21. BOS Request

   a. LGA – tasked 2/21/13; signed response 2/28/13

   b. ORD – tasked 2/21/13; signed response 2/28/13

   c. BOS – tasked 2/21/13; signed response 3/8/13

   d. OLE (BOS) – tasked 12/24/13; signed response 12/30/13

   e. OLE (TSOC) – tasked 12/24/13; signed response 12/30/13

   f. TCC – tasked 06/19/14; signed response 06/25/14

   g. BOS (second tasking) – re-tasked 6/19/14; signed response 07/31/14

22. SFO Request

   a. SFO – tasked 12/19/13; signed response 12/24/13, 12/31/13

   b. SFO (second tasking) – re-tasked 6/26/14; signed response 07/02/14, 07/03/14

   c. TCC – tasked 6/26/14; signed response 07/08/14

   d. DB – tasked 07/17/14; signed response 08/05/14

   e. DB (second tasking) – re-tasked 08/05/14; signed response 08/05/14

23. BOS Re-Request

   a. BOS – tasked 10/26/15; signed response 12/09/15 [tasking states specifically to search for records from 2/22/14 to present]

   b. TCC – tasked 11/18/15; signed response 11/23/15 [tasking states specifically to search for records from 6/26/14 to present]

   c. OLE – tasked 12/17/15; signed response 12/23/16 [tasking states specifically to search for records from 1/1/14 to present]

24. SFO Re-Request

a. SFO – tasked 10/26/15; signed response 10/27/15, 10/30/15, 11/2/15 [tasking states specifically to search for records from 7/4/14 to present]

b. TCC – tasked 11/18/15; signed response 11/23/15 [tasking states specifically to search for records from 6/26/14 to present]

c. DMD (DMD is an alternative acronym for the office known as the Disability Branch or DB) – tasked 11/25/15; signed response 11/25/15 [tasking states specifically to search for records from 7/4/14 to present]

25. For the BOS and SFO Re-Requests, the FOIA Branch tasked the program offices to search for records in a specific timeframe that should have started when that program office had completed its prior search (for the BOS and SFO Requests, respectively), and ended with the present date (i.e., the date of the commencement of the Re-Request search). For some of the program office taskings, however, there was a discrepancy between the actual completed prior search dates for the BOS and SFO Requests and the start dates as written in the corresponding Re-Request tasking assignments. Any discrepancy, however, resulted in an over-inclusive timeframe.

**Plaintiff's Response:** Disputed. Plaintiff disputes that the search method described above is proper or in accordance with the court's latest order. Plaintiff also disputes that any discrepancy resulting from this improper method resulted in an over-inclusive timeframe.

### III. Databases and Search Terms Used for BOS and SFO Re-Requests

26. The Court found that TSA did not adequately describe the databases searched for the BOS and SFO Re-Requests. Dkt. 162 at 35. The Court further found that TSA did not adequately describe the search terms used by the BOS, SFO, TCC, and DB in response to the BOS and SFO Re-Requests. *Id.* at 36.

**Plaintiff's Response:** Agreed.

27. With respect to the BOS Re-Request, BOS searched for responsive records, including electronic records, using Plaintiff's name as a search term in emails contained in Outlook, and for records held by the Customer Service Manager. BOS also searched using Plaintiff's name as a search term for records within an enterprise application database that is used to track and manage operational activities at airports. Using Plaintiff's name as a search term, TCC searched its centralized database for records that were related to the BOS incident on January 21, 2013. OLE/FAMS electronically searched its incident management system database using Plaintiff's name as a search term.

**Plaintiff's Response:** Disputed.

28. With respect to the SFO Re-Request, using Plaintiff's name as a search term, SFO searched for responsive records, including electronic records, in its FOIA records; TSA computer hard drives; its internal, shared websites; emails in Outlook; and in a performance and results information tracking system as well as a security incident report tracking system. Additionally, SFO searched its hard copy records. Using Plaintiff's name as a search term, TCC searched its centralized database for records that were related to the SFO incident on March 1, 2013. DB searched for responsive records including electronic records using Plaintiff's name as well as Plaintiff's name and SFO as search terms in emails contained in Outlook, in the DB manager's computer, and in DB's centralized complaint tracking database. DB also searched for responsive records in the office's centralized hard copy file system.

**Plaintiff's Response:** Disputed.

**IV.   Search Terms Used for BOS and SFO Requests**

29. With respect to the search terms used for the BOS Request, as previously explained, ORD searched for responsive records including CCTV and electronic records held by its Coordination Center as well as its Screening and Inspections department, Dkt. 99-3 at 6 (¶ 17).

ORD conducted its searches using the date of the ORD incident (December 25, 2010) as the search term.

**Plaintiff's Response:**  Disputed.

30.  As for the search terms OLE/FAMS used for the BOS Request, the office lacked a record of the search terms it used in 2013 when responding to the BOS Request.  Accordingly, in an effort to provide the Court with adequate information regarding search terms pursuant to the Court's Memorandum Opinion and Order, Dkt. 162 at 36, OLE/FAMS conducted a new search on June 14, 2018, in accordance with their general business practice for responding to FOIA requests (the same business practice that OLE/FAMS believes it utilized for the original search in 2013).  For that search, OLE/FAMS searched for responsive records, including electronic records, in their incident monitoring database and the archive for that database, along with electronic log databases in which incidents may be recorded.  The search parameters used, including search terms, were Plaintiff's name, Boston, BDO referral, American Airlines, and the date range of December 1, 2012 to January 31, 2013.  The search yielded the same incident reports that were released to Plaintiff in response to the original BOS Request; no new, previously unreleased records were located.

**Plaintiff's Response:**  Disputed.

31.  With respect to the search terms used for the SFO Request, SFO searched responsive records using Plaintiff's name as well as the date of the incident (March 1, 2013) in combination with Delta Airline passengers.

**Plaintiff's Response:**  Disputed.

32.  DB performed its search using as search terms Plaintiff's name, SFO, and San Francisco International Airport.

**Plaintiff's Response:**  Disputed.

13

**PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. TSA failed to search the Sensitive Security Information offices, compilation of Sensitive Security Information (SSI) which includes standard operating procedures as well as SSI removals. *See* Dep't Homeland Sec. Management Directive 11056 § VI.C.3.1

2. TSA has failed to search SSI greater than three years old, which expires unless renewed. *Id.* § VI.E.2

3. TSA failed to search its intranet websites. ECF 121-1.

4. TSA failed to search its email database as opposed to individual employee searches of email.

5. Document 2013-TSFO-01096_CCTV Bates 9 and 10 is illegible.

6. TSA's search terms were inconsistent across offices in a manner responsibly likely to fail to reveal responsive producible documents.

7. TSA's search efforts leave substantial doubt as to the sufficiency and reasonableness of the TSA's searches.

Dated: September 5, 2019    Respectfully Submitted,

By:_____
/s/ Jeffrey T. Green
Jeffrey T. Green, D.C. Bar No. 426747
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
jgreen@sidley.com
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Counsel for Plaintiff*