**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAI,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>TRANSPORTATION SECURITY<br>ADMINISTRATION,<br><br>　　　　　　　Defendant. | Civil Action No. 14-403 (RDM) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Date: September 5, 2019

By: _____
　/s/ Jeffrey T. Green
　Jeffrey T. Green, D.C. Bar No. 426747
　SIDLEY AUSTIN LLP
　1501 K Street, N.W.
　Washington, D.C. 20005
　jgreen@sidley.com
　Telephone: (202) 736-8000
　Facsimile: (202) 736-8711

　*Counsel for Plaintiff*

**INTRODUCTION**

On May 24, 2018, this Court issued a memorandum opinion granting in part and denying in part the TSA's motion for summary judgment. In its comprehensive, 70-page opinion—later amended on September 25, 2018—the Court carefully reviewed the TSA's factual assertions and legal arguments and denied summary judgment as to ten key issues. Importantly, this Court also provided detailed guidance regarding open questions for future proceedings, and granular details of factual and legal deficiencies in the TSA's arguments.

Rather than follow this Court's guidance as to analytical framework, or focus on addressing its questions, the Government has chosen to double down on its prior positions. As Plaintiff explains in more detail below, the TSA's declaration and memorandum in support of its Renewed Motion for Summary Judgment primarily consist of dubious legal arguments that attempt to sidestep this Court's questions, reassertions of prior positions that this Court has already found deficient in material respects, and factual assertions that, when they do present evidence of substantive value, indicate that summary judgment is actually appropriate for Plaintiff, rather than justifying its own behavior. Thus it is that the TSA provides *no* analysis of whether "discretization" can constitute a "form or format" for E-FOIA purposes, despite this Court's direct question on the subject. Thus it is that the TSA spends pages describing how compliance with Plaintiff's format requests would make the FOIA review process more difficult, even though this Court pointedly criticized reliance on such administrative costs as a justification for non-compliance with E-FOIA—a criticism that this Court is not alone in making. And thus it is that the TSA avers that it knows of no way apart from FOIAXpress to securely apply redactions, despite showing no evidence of having meaningfully investigated any alternatives that would perform redactions while

leaving files in native, accessible formats, and leave intact records—metadata—which it is has no basis for withholding.

Plaintiff respectfully submits that the latest round of arguments and undisputed facts demonstrate that partial summary judgment as to the ready reproducibility of the documents in Plaintiff's preferred format is warranted.  At bottom, Plaintiff's E-FOIA-related format requests are eminently reasonable: they seek the records in the electronic format in which those records were created and are currently stored at the agency, and/or fully digital (i.e., non-rasterized) PDFs, with all metadata intact. The TSA is obviously capable of producing records in the format it keeps them, and is required by law to do so.

To the extent that providing records in the requested formats may require that the agency change agency systems, software, or practices, that too is required.  The Government may not evade legal obligations by self-handicapping.

## STANDARD OF REVIEW

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that would change the outcome of the litigation." *EPIC v. Dep't Homeland Sec.*, 999 F. Supp. 2d 24, 28 (D.D.C. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must "analyze all underlying facts and inferences in the light most favorable to the FOIA requester." *Bigwood v. Dep't of Defense*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015).

**ARGUMENT**

Plaintiff submits that partial summary judgment is appropriate on the basis of the arguments and authorities they present in opposition to the agency's contentions in its Renewed Motion for Summary Judgment.

In that opposition, Plaintiff demonstrates that: (1) Plaintiff requested documents relevant to the BOS and SFO Re-requests in their native format; (2) "discretization" can qualify as a "form or format" for purposes of 5 U.S.C. § 552(a)(3)(B) where it is requested as part of an electronic format that has distinct, individually named files as an inherent characteristic; (3) the agency does not dispute that it is technically capable of manually redacting documents in their original formats by editing or deleting sensitive data from native Microsoft Word, Excel, or similar electronic formats; (4) redacting documents in original formats does not create a "new" record in any meaningful sense, or if it does, it is a voluntary act by the agency and is therefore waived; and (5) the only other justifications the agency offers for its failure to comply with the terms of E-FOIA relate to administrative difficulty and the possibility of human error, neither of which is sufficient to excuse compliance with E-FOIA as a matter of law.  While Plaintiff refers this Court to their opposition briefing for greater detail, they also briefly expand upon these points here.

*First*, as a matter of language and context, Sai's BOS and SFO Re-requests plainly indicate a request for production of native file types.  The request calls for production of documents "in their original electronic format or as a scan of any documents that are originally paper." Mot. to Compel Production of Docs., Att. 3 at 11–12, ECF No. 28-3.  The import of this language is that while records originating on paper should be scanned and the resulting image should be produced, other records should be produced in the electronic format in which they originate.  This reading is emphasized by the use of the word "original" to modify "electronic format," *i.e.*, the format in

4

which the records originated, as opposed to the many other possible electronic formats for production. It is further confirmed by the common-sense observation that there exist multiple electronic formats, such that it would be logical and sensible for Sai—whose technological savvy is acknowledged by the TSA—to specify. As explained in Plaintiff's opposition, none of the arguments presented by the TSA suffice to call this plain meaning into question.

*Second*, Sai's request for records responsive to the Policies Request in an electronic format that involves discrete, individually named files triggers agency's obligations under 5 U.S.C. § 552(a)(3)(B). It is a technological reality that many electronic formats involve the creation and storage of distinct electronic files with individualized file names as inherent characteristics—including various, if not all of the original versions of the records at issue. Am. Mem. Op. at 22; Reply to Opp. to Mot. Re 99 Mot. Summ. J., Att. 1 ¶¶ 12–16, ECF No. 118-1 (describing original format). Accordingly, Plaintiff's format specifications relating to these features represent no more than a request to preserve these aspects of the original electronic format when the agency ultimately chooses its format for release—and, specifically, to avoid producing rasterized PDFs (with the sole exception of scans of paper documents). Govt's Mot. Summ. J., Att. 3 at 129, ECF No. 99-3. Plaintiff explicitly requested records be provided "in an electronic, machine-processable, accessible, open, and well-structured format to the maximum extent possible"; the TSA does not claim, nor could it, that a concatenated, rasterized PDF fulfills this specification, whereas other formats, including the formats of the original files, do. Meanwhile, as Plaintiff's opposition explains, none of the TSA's arguments even squarely address this Court's question, and are premised on fundamental mischaracterizations of Plaintiff's request.

*Third*, the agency is technically capable of successfully redacting records in their native formats or as fully digital PDFs. The TSA admits that it could accomplish redactions of sensitive

5

data by manually editing or deleting sensitive data from the documents in their native Microsoft Word, Excel, or similar format. Govt's Second Mot. Summ. J., Att. 2 ¶ 21 n.3, ECF No. 174-2 ("TSA is not aware of any redaction tools in software programs like Excel, Outlook, and Word. Therefore, the FOIA Branch would likely need to manipulate the records by manually deleting exempt information . . . ."). The TSA claims that it need not undertake this redaction process because manual deletion or other editing of sensitive information in native formats would somehow involve "creating a new record." *See also* Govt's Second Mot. Summ. J., Att. 1 at 11 n.3, ECF No. 174-1 ("Therefore, the only way to remove SSI and exempt information from such documents would be to edit and manipulate them into a new record without the exempt information."). But what the TSA refers to as "creating a new record" is no more than the redaction process itself—the agency starts with an original version and, without destroying that version, makes redactions to conceal sensitive information, eventually concluding the process with a redacted version ready for release and an original version to retain. Indeed, the agency admits that FOIAXpress works in just this way. Govt's Second Mot. Summ. J., Att. 2 ¶ 8, ECF No. 174-2. Manual redaction of the records in their original formats does not constitute creation of a new document except in the same way that any redaction method does.

*Finally*, the agency's administrative burden is plainly insufficient as a matter of law to excuse its failure to comply with the requirements of E-FOIA. This question is properly analyzed under the framework that this Court identified in its September 2018 opinion—a framework the agency ignores—and is squarely answered by relevant precedent.

In *Public.Resource.org v. IRS,* 78 F. Supp. 3d 1262 (N.D. Cal. 2015), that court evaluated arguments relating to "compelling evidence of significant interference or burden," *id.* at 1264, in materially similar circumstances. There, a plaintiff filed a FOIA request with the IRS, seeking a

6

series of forms filed by tax-exempt organizations in "MeF format," which the IRS did not dispute was the format in which those forms were created and maintained. *Id.* at 1263. The IRS explained that its existing production process was "to convert the MeF data into a PDF format and withhold confidential return information from the resulting form," and that production in MeF format was not readily available "because the IRS has not developed protocols or trained staff to be able to redact sensitive information . . . in the MeF format," and would have to "shift significant resources . . . to develop a new protocol, train its employees, and develop the technical capacity to produce the requested [forms] with exempt information redacted." *Id.* at 1263–64. Having considered these arguments, the court determined that they were not compelling evidence of a significant burden, and that if such administrative costs were accepted as "a valid excuse," Congress's recognition that "new and changing technology could improve both agency FOIA compliance and public access to government information" and its related command "that agencies act proactively to enhance public access to and use of government information" would be frustrated. *Id.* at 1266–67. Plaintiff submits that precisely the same reasoning should control in this case.

In *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1283 (D.C. Cir. 1993), this Circuit rejected a very similar argument. The Executive Office wanted to retain (and produce) only paper copies of originally electronic records, which is equivalent to Defendant's desire to produce only rasterized PDFs. *Id.* That court ruled that "the mere existence of the paper printouts does not affect the record status of the electronic materials unless the paper versions include all significant material contained in the electronic records. Otherwise, the two documents cannot accurately be termed 'copies' — identical twins — but are, at most, 'kissing cousins.'" *Id.*. Again, the same applies here; the records that the TSA seeks to produce are not even *copies* of the records requested; lacking all of the information present in the original electronic record, such as metadata,

7

structure, text, and other data, the productions are only distantly related, substantially degenerated images (rasterizations).

Plaintiff also observes that TSA has failed to provide even a reasonable facsimile of important information earlier requested. These include: (1) an index of metadata withheld; (2) complete email chains; (3) emails stemming from inter/intra-agency referrals; (4) any explanation for extra redactions noted; and (5) withheld email attachments. *See* Resp. to Order to Identify Content, ECF 166. Because TSA has not even claimed any basis for withholding these records, Plaintiff respectfully requests that this Court order the production of these documents.

## CONCLUSION

Based on the arguments and authorities herein presented, Plaintiff respectfully requests that this Court enter an order granting partial summary judgment in their favor, and order production of the documents specified herein and in Plaintiff's requests.