**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAI, | Civil Action No.  14-403 (RDM) |
| Plaintiff, | |
| vs. | |
| TRANSPORTATION SECURITY ADMINISTRATION, | |
| Defendant. | |

### PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANT'S OPPOSITION TO CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Date:  January 24, 2020

By: /s/ Jeffrey T. Green
Jeffrey T. Green, D.C. Bar No. 426747
Chike Croslin, USDC D.C. Bar No. D00514
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
jgreen@sidley.com
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Counsel for Plaintiff*

## INTRODUCTION

In their prior briefing, Sai demonstrated that the TSA's declaration and memorandum in support consisted of legal arguments that failed to answer the Court's questions, reassertions of prior positions that this Court has already criticized, and factual assertions that either lack evidentiary value or support Sai's position. The TSA's playbook has not changed with its latest submission, where it extensively mischaracterizes Sai's arguments rather than meet them squarely, ignores authority that is on all fours with this case legally and factually, mischaracterizes the text of Sai's FOIA requests, and fails to acknowledge whole portions of Sai's prior filings. These attempts at rebuttal are unconvincing, and none of them protects the TSA from the recognition that is at the heart of this case—that the difficulties the TSA describes are the result of its own actions, systems, and procedures, and that it is not permitted to evade legal obligations by handicapping itself.

## ARGUMENT

## I.   THE TSA HAS FAILED TO RELEASE RECORDS IN A MANNER COMPLIANT WITH E-FOIA.

### A.   The BOS And SFO Re-Requests Seek Production Of Relevant Records In Their Native Formats.

*First*, the TSA says that its interpretation "give[s] specific meaning to the word 'original'" rather than reading it out of Sai's request, and that whatever reason there may have been for Sai to specify their choice of electronic format is irrelevant. Reply in Supp. of Def.'s Renewed Mot. for Summ. J. and Op. to Pl.'s Cross-Mot. for Partial Summ. J. at 6, ECF No. 188 ("ECF No. 188"). These assertions are puzzling. As Sai noted in their prior briefing, to accept the TSA's interpretation of "in their *original* electronic format or as a scan of any documents that are originally in paper," Pl.'s Op. to Def.'s Renewed Mot. for Summ. J. at 3, ECF No. 184 ("ECF No. 184) (emphasis added), would mean reading that phrase as equivalent to "in *any* electronic format

or as a scan of any documents that are originally in paper." "Original" does not mean "any." Thus, a functional substitution of the word "original" for "any" necessarily eliminates the generally accepted meaning of "original" in favor of a different meaning, and so constitutes an impermissible attempt to rewrite the request. Moreover, reference to the portion of the phrase that reads "originally in paper" does not call for a different conclusion. The phrases "are originally in paper" and "in their original electronic format" are textually and grammatically distinct. There is nothing to support reading them as though that distinction did not exist.  Lastly, the fact that these textual and grammatical distinctions correspond to the real-world differences between electronic records and paper ones—specifically, the fact that there are multiple electronic formats—confirms that Sai's interpretation makes both grammatical and real-world sense, and further underscores its preferability over an interpretation that makes neither.

*Second*, the TSA contends that "it is eminently reasonable for the TSA to assume" that the BOS and SFO re-requests did not seek native file types because the BOS and SFO requests did not do so. ECF No. 188 at 5. There is nothing reasonable about that assumption, however. This Court has already determined—over the TSA's objection—that these were separate requests, contrary to the TSA's prior assumption otherwise. Mem. Op. and Order at 15, ECF No. 74 ("ECF No. 74") ("[I]t is difficult to view this email as anything other than a separate FOIA request."). They contain distinct language, and they refer to distinct items for release. *Id.* Critically, the language regarding format is possibly these requests' most distinct feature. No other request, including the BOS and SFO requests, contains the same. In treating these requests as "link[ed]," such that the distinct language of one is merely a "reiteration" of the other, ECF No. 188 at 5–6, the TSA again refuses to recognize the distinctions between these requests, and ignores the re-requests' specific demand for documents in the electronic format in which those documents originated.

Nothing that the TSA raises in its three examples of communications with Sai changes this conclusion. To start, the TSA's reliance on Sai's message that it "need not re-release records . . . already released . . . in response to the BOS and SFO Requests," ECF No. 188 at 7, is misplaced. No part of that message says or implies anything about the format of any documents that TSA will produce purely pursuant to the re-requests. Instead, one portion of the message clarifies the difference between prior requests and the re-requests, and after a paragraph break, a second portion addresses "purely duplicative" documents—that is, documents that would have already been the subject of previous requests and, thus, of different formatting specifications. Decl. of Regina McCoy at 180, ECF No. 99-3 ("ECF No. 99-3"). Perhaps most tellingly, the message—dated October 27, 2015—is part of a chain that also includes a message dated September 21, 2015, in which Sai explicitly noted that they sought, "as always",  "native format, electronic documents", with examples that "emails should be in .msg format (or whatever is native), with native attachments (PDF, XLSX, PPT — whatever they were)."  *Id.* at 182.  "Were", past tense, refers to the format as kept on TSA's systems *prior* to manipulation by the FOIA office.  The TSA does not explain why it bypasses the express language of this message to make formatting assumptions based on a message that does not address format at all. Further, the TSA's rehearsal of communications from which it purports to have "reasonably viewed Sai's demand as duplicative of the original BOS and SFO Request," ECF No. 188 at 6, not only changes nothing about the linguistic distinctions between those requests and the re-requests, but also appears to ignore this Court's determination that these requests are separate and distinct on their face. ECF No. 74 at 15. Finally, Sai is at a loss as to what "confirmation" the TSA suggests that this Court take from Sai's one-sentence reminder message. 2013-01-26—2014-01-06 Correspondence re TSA Grievances at

13, ECF No. 28-3 ("ECF No. 28-3"). There is no reason to expect Sai's reminder emails to match the level of detail or specificity of the re-requests themselves.

*Third*, the TSA now argues—for the first time in its Reply and Opposition—that the word "format" in the E-FOIA context does not address electronic file types at all.[1] ECF No. 188 at 7–8. The TSA is mistaken. As an initial matter, this Court's September 25, 2018 decision forecloses the TSA's argument, insofar as this Court's prior analysis treats different file types as different "formats", and cites portions of the TSA's own filings that do the same. *See, e.g.*, Am. Mem. Op. at 18, ECF No. 172 ("ECF No. 172") (treating "Word, Excel, or electronic PDF" as distinct formats, and quoting section of McCoy Declaration that refers to releasing records "in [a] PDF format"). Moreover, that such file types can constitute separate formats is a necessary implication of the questions the Court posed to the parties. The recognition that "format" can refer to file types is therefore law of the case. *See New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 141 (D.D.C. 2002) (noting that law-of-the-case doctrine "bars reconsideration of a court's explicit decisions, as well as those decided by necessary implication"). Case law also supports the Court's analysis. For instance, in *TPS, Inc. v. United States Department of Defense*, 330 F.3d 1191 (9th Cir. 2003), relied on by this Court in framing the "readily reproducible" inquiry, the analysis and decision revolved around a request for "the transmission of two files in 'zipped' format," which is a file type that specializes in the compression of data. *See id.* at 1193 n.1 (describing nature of a "'zipped' file"). Similarly, the analysis in *Scudder v. CIA*, 25 F. Supp. 3d 19 (D.D.C. 2014), also relied upon by this Court, discusses the existence of records "in PDF format" and the lack of need for conversion "to a different format," thereby recognizing file types as formats. *See id.* at 43. The

---

[1] Plaintiff notes that this argument represents a shift from what the TSA originally asserted in its motion. There, the TSA incorrectly characterized Sai's argument as being that the word "format," standing alone, "referred to native file types," and then argued that it did not. ECF No. 174-1 at 5–6. That contention is distinct from the proposition advanced here, which is that "format" does not include "file types" at all.

same was true in *Public.Resource.org v. IRS*, 78 F. Supp. 3d 1262 (N.D. Cal. 2015), where the analysis and decision focused entirely on entitlement to receive documents in "MeF format" or "a PDF format." *See id.* at 1263. The ordinary meaning of "file format" as that term is used in computer science also supports these determinations. *See* Microsoft Computer Dictionary 211 (Microsoft Press 5th ed. 2002) (defining "file format" as "the structure of a file that defines the way it is stored and laid out on the screen or in print," and noting that examples include "RTF (Rich Text Format)" and "TIFF (Tagged Image File Format)"); *see also id.* at 213 (defining "file type" as "a *designation* of the operational or structural characteristics of a file" and cross-referencing "file format") (emphasis added). The TSA's attempted distinction between "format" and "file type" is therefore untenable. Rather, as confirmed by prior decisions in this case, relevant precedent, and ordinary usage, the statute's reference to "format" includes *all* the ways in which electronic data can be structured and stored, including the different structures and storage methods associated with various file type designations.

### B. The TSA Is Obligated To Produce Policies Request Records In An Electronic Format That Uses Discrete, Individually Named Files.

Rather than take advantage of yet another opportunity to address the court's question to the parties—whether discretization constitutes a "form or format" for FOIA purposes, *see* ECF No. 172 at 16—the TSA instead attacks a series of distorted arguments that Sai did not make. The TSA: (1) represents Sai as contending that "electronic formats" or "electronic records" in general are inherently discrete, and then argues that electronic records are no more uniquely discrete than are paper records, such that Sai's alleged argument as to electronic formats would also call for binding or segregation of paper records; (2) characterizes Sai's request for electronic records in a format that conforms to key formatting specifications as merely seeking productions of "abstract" and "nonsubstantive" information *about* records; (3) argues that Sai has mischaracterized the

Policies Request, which the TSA contends is about separating and assigning names to documents; and (4) contends that Sai fails to explain why various cases concerning the arrangement and organization of documents would not apply to the Policies Request. Each of these assertions is fundamentally flawed.

*First*, the TSA significantly distorts Sai's argument regarding why discretization and individualization qualify as a "form or format." Although it may well be true that discrete files are an inherent feature of *all* electronic formats, and that one could bind or separate paper documents, this misses the point. Sai merely recognizes that discretization and individual naming are electronic formatting specifications. The fact that the creation and storage of distinct electronic files with individualized names in a directory is an inherent and essential aspect of how documents are stored in *many* electronic formats—and, critically, the native formats of the documents at issue in this case—makes this conclusion evident.

It follows from this recognition that in seeking individualized names and discrete document files, Sai has merely made explicit a request for aspects of formatting that are endemic to a range of common and recognized electronic formats. While such a request does not mandate a particular file type—for instance, it allows proprietary video to be converted to any "open" format—it does limit the agency's range of choice by specifying aspects of formatting that need to be present. Sai also specified one electronic format—rasterized, concatenated PDFs—to be avoided, yet that is the one format that the TSA used exclusively.[2]   Thus, Sai's request created a set of formatting restrictions that bracketed the universe of acceptable electronic formats. That is sufficient to trigger the agency's obligations under 5 U.S.C. § 552(a)(3)(B).

---

[2] (Other than with CCTV video, for which Sai has not objected to the format provided.)

Having now properly described Sai's position, it is evident that Sai's argument and the TSA's refutation are ships passing in the night.  The point is that since there is a range of electronic formats with formatting specifications that *necessarily* include storage as discrete, individually named files within a larger directory, a request for electronic documents meeting those specifications is a *formatting* request. It follows that the agency should respond to Sai's request for discrete, individually named files with an electronic format having specifications that correspond to that storage method. *See* Gov't Second Mot. Summ. J. at 8, ECF No. 174-1 ("ECF No. 174-1") (noting that statutory and legislative history "make clear that the phrase 'form or format' in E-FOIA refers to the method in which records are stored"); Microsoft Computer Dictionary 211 (Microsoft Press 5th ed. 2002) (defining "file format" as "the structure of a file that defines the way it is stored and laid out on the screen or in print").

*Second*, the TSA also substantially distorts Sai's reference to "preservation" as it relates to the Policies Request.  Sai's understanding of what the Policies Request requires is set out above, an understanding that corresponds to their position in prior filings. The use of the word "preserve" in prior filings merely represents the logical combination of: (1) the fact that Sai requested particular formatting specifications; and (2) the fact that the original formats of the responsive documents already correspond to those specifications.  It follows that, as a practical matter, compliance with the request would require only that the TSA not destroy—that is, "preserve"— the requested formatting specifications that already exist while undertaking any conversion process that it might choose to implement.  Accordingly, the TSA's argument that it need not produce or preserve "abstract" or "nonsubstantive" information *about* records misses the mark. Sai is not seeking separate production of information *about* or *in addition to* records. Rather, they are seeking

the records themselves, in an electronic format that conforms to the identified specifications.[3] Similarly, the TSA's argument that Sai mischaracterizes the Policies Request by using the word "preservation" also misses the point, because that word merely refers to the implication of the request in the circumstances, as has been explained.

*Third*, the TSA's assertion that the Policies Request calls for the separation of distinct documents and the assignment of individual names is in error. The Policies Request nowhere includes the words "separate" or "assign," and does not include any synonym for these words. Rather, it simply requests release in an electronic format, and in the first bullet point beneath the umbrella paragraph containing that request, it describes the specifications to which that format should conform. ECF No. 99-3 at 129. The request does not assume that relevant records are stored in an amalgamated or nameless format that would make additional "separation" or "assignment" necessary—which, in fact, they are not.  Thus, to the extent that the TSA finds it necessary to separate or assign anything, that need results entirely from its own decision to release the documents in the concatenated PDF format that the request specifically foreclosed, and to thereby *destroy* the meaningful storage method by which it ordinarily keeps the records prior to their processing by its FOIA department, and which Sai requested.

*Fourth*, and relatedly, the TSA's assertion that Sai has failed to distinguish cases allegedly relating to organization of records or accompanying explanatory material is also puzzling.  The principle that the TSA purports to distill from these cases—that FOIA does not require the

---

[3] This includes electronic metadata that is an intrinsic part of the original record in a requested format. Notably, in none of the cases cited by the TSA that purport to establish a "rule" regarding metadata in this District did a plaintiff make a specific request for an electronic format that would include metadata as an intrinsic aspect.  *See, e.g., Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Educ.*, 905 F. Supp. 2d 161, 171 (D.D.C. 2012) (noting that there was no requirement to produce an electronic format with metadata in the absence of any request for electronic format at all ); *Covad Commc'ns Co. v. Revonet, Inc.*, 267 F.R.D. 14, 20 (D.D.C. 2010) (nothing that no specific electronic format, including native format (with intrinsic metadata) was necessary in the absence of a format request).

arrangement of records or the generation of additional explanatory material—is irrelevant, since, as Sai explained in its prior briefing, the Policies Request seeks neither of these things. Rather, the Policies Request explicitly seeks an electronic format with certain common specifications. *See id.* at 129. Moreover, as was explained in Sai's prior briefing, none of these cases provides any analysis from which any "principle" is clearly discernible, and none bears any factual or analytical similarity to the circumstances of this case. *See* ECF No. 184 at 14. Indeed, the case on which the TSA places the greatest reliance—*Prison Legal News v. Lappin*, 780 F. Supp. 2d 29 (D.D.C. 2011)—does not even mention E-FOIA. *See id.*

*Finally*, the TSA repeats its mistaken arguments regarding "preservation," electronic versus paper records, and abstract information in an attempt to escape the implications of its own statutory analysis of the phrase "form or format." For all the reasons reviewed above, this attempt fails. Accordingly, the TSA is left with the implication of its own conclusion that "the phrase 'form or format' in E-FOIA refers to the method in which records are stored." Here, that means as discrete, individually named files, with intrinsic metadata intact—exactly as Sai requested.

## C. Responsive Records Are Readily Reproducible To Requesters As Native, Non-Rasterized, Or Distinct Files.

Notwithstanding the mountain of authority to the contrary, the TSA maintains its contention that the systems and procedures that it has itself adopted prevent it from readily reproducing responsive records in the requested format—even though the TSA "already creates or converts [the] documents in [that] format . . . in the ordinary course of business." *TPS*, 330 F.3d at 1195. The TSA is mistaken. In fact, no authority permits an agency to rely on an obstacle of its own making in order to defeat the requirements of E-FOIA, and none of the contentions advanced in the TSA's latest filing changes either this conclusion or its implications for this case. Moreover, neither the authorities nor the circumstances of this case support precluding Sai from disputing

any of the facts or related issues in any of the TSA's filings. Accordingly, this Court should find

that the relevant records are readily reproducible in the formats Sai requested.

As an initial matter, the TSA notes that Sai did not fully respond to its statement of

undisputed material facts because they did not indicate their position on E-FOIA-related

paragraphs 1 through 22. ECF No. 188 at 13. Sai agrees that they mistakenly neglected to include

written denials of the indicated paragraphs in the statement of disputed material facts filed with

their opposition. *See* Pl.'s Counterstatement and Statement of Additional Facts, ECF No. 184-2

("ECF No. 184-2"). Sai's counsel is new to the case, and had to become familiar with the

voluminous record, develop a strategy, choose appropriate arguments, and complete drafting. Sai

regrets the obvious oversight. Nevertheless, the TSA's contention that this error automatically

results in admission of the facts contained in the relevant paragraphs supposes a draconian penalty

that is both unsupported by precedent and unnecessary under the circumstances. Numerous courts

have made clear that while district courts retain the discretion to adopt the sanction recommended

by the TSA, that sanction is severe, and accordingly "should only be applied to egregious conduct."

*Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002) (quoting *Robbins v. Reagan*, 780 F.2d 37, 52

& n. 23 (D.C. Cir. 1985)); *Robertson v. American Airlines, Inc.* 239 F. Supp. 2d 5, 9 (D.D.C. 2002)

(citing *Burke* and noting that "severe results can follow admission of the opposing party's facts"

and declining to impose most severe penalty where an opportunity to refile would resolve

problem). While Sai's statement of disputed material facts is imperfect, the TSA has not argued

and cannot argue that any "egregious" conduct is involved. *See Burke*, 286 F.3d at 518 (describing

as "egregious" conduct involving a further request to supplement statement of material facts after

the grant of various continuances, motions to correct deficiencies, and claim of prejudice by

opposing party). Nor does this oversight prejudice the TSA. The TSA responds to each of Sai's

arguments on the merits, and so cannot contend that this error prevented it from doing so. *See Smith Prop. Holdings, 4411 Connecticut LLC v. United States*, 311 F. Supp. 2d 69, 78 (D.D.C. 2004) ("[P]laintiff ha[d] not demonstrated that it was prejudiced in its ability to respond to the government's motion" where it was able to file a reply and opposition). Moreover, these denials were made by Sai in response to the TSA's prior motion. *See* ECF Nos. 111-1 (response to first statement of material facts), 111-2 (statement of issues in dispute). Thus, neither the circumstances of this case nor the authorities cited by the TSA support application of the strictest penalty in this instance. With this preliminary matter aside, we address the TSA's arguments on the merits.

*First*, the TSA mischaracterizes Sai's argument regarding the conspicuous absence of reference to this Court's articulated legal standard by characterizing the argument as a complaint from Sai that "TSA does not quote that standard back in its brief." ECF No. 188 at 12. Rather, the point is that the TSA's brief did not reference that standard or any of the relevant cases identified by this Court at all, instead appearing to replace it with something less demanding than "compelling evidence" and certainly less specific to the circumstances of this case. *Compare* ECF No. 172 at 21–22 (describing and quoting applicable standard as it appears in *Scudder* and *TPS*) *with* ECF No. 174-1 at 8–11 (not mentioning the standard, the cases, or the court's discussion thereof). This goalpost-shifting maneuver highlights the TSA's failure to defend its positions in light of the relevant standard and the line of cases that develop and explain its application. *See, e.g.*, *Public.Resource.org*, 78 F. Supp. 3d at 1262 (applying *TPS* standard to highly similar circumstances). It also sets the stage for yet another instance of the TSA offering arguments that do not directly address this Court's questions.

*Second*, the TSA distorts Sai's position in contending that Sai faults the TSA for not altering *any* of its arguments at all. Sai freely admits that the TSA's second motion for summary

judgment has articulated *some* updates to its prior production.  Sai's criticism, however, focuses expressly on the TSA's arguments based on administrative burden—those arguments that were the subject of extensive, reasoned criticism in this Court's prior opinion, but which nonetheless appear in substantially similar form in two dedicated paragraphs of the TSA's second motion for summary judgment. *Compare* ECF No. 172 at 18–19 (describing administrative burden arguments that Court later criticizes, *id.* at 22–23) *with* ECF No. 174-1 at 9–10 (rehashing administrative burden arguments).  While the TSA criticizes Sai for allegedly ignoring the statements on the countermanding of redactions in the Miller Declaration, *see* ECF No. 188 at 12, it neglects to mention that the agency's own statement of material facts contains separate sections marked "Countermanding of Redactions" and "Administrative Burden"—a structure that parallels the separate treatment of these arguments in its briefing. Critically, the agency also glosses over the fact that the section marked "Administrative Burden" contains allegations that are substantively identical to those advanced in the third supplemental McCoy Declaration. *Compare* ECF No. 174-2 at ¶¶ 16–22 *with* ECF No. 118-1 at ¶¶ 7–16.  Where the TSA makes the same or closely related arguments based on the same or closely related facts, Sai submits that it is appropriate to rely on the same reasoned criticisms.

*Third*, the TSA distorts Sai's position regarding the countermanding of redactions, describing it as faulting the TSA for "fail[ing] to prove [a] negative."  ECF No. 188 at 13. In reality, Sai's arguments are twofold, and neither references any "negative." Sai first notes that the natural result of the agency's contention that the rasterized PDF format it prefers is the *only* format that it is supposedly "capable" of accommodating would be to functionally release the agency from its E-FOIA obligations thereby eviscerating both the text of E-FOIA and Congress's chief purpose in enacting the E-FOIA amendments. While the TSA's latest brief neither acknowledges nor offers

any response to this point, an argument that produces such a result is plainly unacceptable, as a matter of faithfulness to congressional intent.

Sai's second point is that an agency declaration that contains nothing more than an averment of current ignorance—with no demonstration of any attempt to consider or inform itself about options or solutions other than its existing procedure and preferred format—is the antithesis of "specific" evidence. Indeed, the TSA's averment regarding software tools for redaction of documents in their original formats aptly demonstrates the evidentiary vacuity of the TSA's assertions. The Miller Declaration avers that producing records in their original format or as fully-digital PDFs would have required it to "apply appropriate redactions using redaction tools available in the records' native software programs like Excel, Outlook, or Word," and then avers that "TSA is not aware of any redaction tools in software programs like Excel, Outlook, and Word." ECF No. 174-3 ¶¶ 20–21 & 21 n.3. Nevertheless, a relatively minimal amount of internet research demonstrates that there are multiple guides as to methodologies specifically designed to permit review, redaction, and production of these documents in their native formats or as fully digital PDFs. These include a guide from Microsoft itself for redacting metadata while *keeping* the original format (Word, PowerPoint, Excel, or Visio)[4], a guide by the NSA[5], and a guide compiled by the U.S. District Court for the Eastern District of California. *See, e.g.*, Exhibits A–F.[6] Where a list of possible alternatives is available after minimal research, a statement that the TSA is simply "not aware" of alternatives to its current process is not of evidentiary value—

---

[4] "Remove hidden data and personal information by inspecting documents, presentations, or workbooks", https://support.office.com/en-gb/article/remove-hidden-data-and-personal-information-by-inspecting-documents-presentations-or-workbooks-356b7b5d-77af-44fe-a07f-9aa4d085966f
[5] "Redacting with Confidence: How to Safely Publish Sanitized Reports Converted From Word to PDF", Report #I333-015R-2005, http://www/ca7/uscourts/gov/forms/nsa-redact.pdf
[6] Sai emphasizes that under FOIA, *all* withheld information must be justified by exemption, and the TSA has not even claimed that the withheld metadata is exempt. Any metadata unlawfully withheld is sufficient to deny judgment at this time.

presumption of good faith notwithstanding. *See Scudder*, 25 F. Supp. 3d at 39 (noting that deference to agency declaration "does not amount to a blanket exemption from judicial review of the agency's justification for declining to comply with a specific format request or failing to maintain records in readily reproducible formats").

*Fourth*, the TSA distorts Sai's position on manual editing, and relies on a series of unconvincing arguments in attempt to escape the implications of its own admission: that the agency could redact the documents outside of FOIAXpress by manually manipulating the record in its original format. In the TSA's rendering, Sai's position is that "the TSA *must* edit documents stored as Word and Excel files" to redact sensitive information. Not so. In reality, Sai does not attempt to control the manner in which the TSA performs redactions for production in Sai's requested formats. Sai merely notes that by the agency's own admission, the agency *could* redact them by editing them[7], meaning that redaction and subsequent production—even if it complicates the agency's existing FOIA process—are not impossible.

Next, the TSA contends—for the first time—that editing the documents would run afoul of 5 U.S.C. § 552(b), which requires that the amount of information deleted from a record be indicated on the portion that is released. TSA argues that, unlike overlaid redactions, manual editing would not comply with this rule. This contention is puzzling. There is nothing in Sai's argument that would suggest that the TSA is required to delete information without indicating that deletion occurred.

The TSA has provided no reason as to why it would be so required. For instance, the agency could replace text containing sensitive information with a line of the character "X", or even the label "[redacted, <reason>]." From the perspective of the reader, the obfuscation of information is

---

[7] *See supra* guide from Microsoft on how to do exactly that.

the same, and the indication would be no less clear than if the agency had used an overlaid redaction.

The TSA further contends that there would be no way to edit "many" file types using this method. In reality, the agency only mentions two specific file types—Outlook (.msg) files and JPEG (.jpg or .jpeg) files. The TSA is mistaken about .msg files; they are in fact editable in their native format. *See* Exhibit G. So are JPEG files (and indeed any image file); they can be edited in as basic a tool as Microsoft Paint, *see* Exhibit H, or something more sophisticated like Adobe Photoshop or Illustrator (which can handle rasterization layers and vector image files, respectively).

Next, the TSA argues that Sai has failed to demonstrate that manual editing would prevent the reversal of redactions. This contention, however, misplaces the burden of proof. Under the standard announced in *TPS*, it is the *agency*'s duty to come forward with "specific, compelling evidence" that complying with a format request would represent a "significant" burden.[8] *See* ECF No. 172 at 22–23 (noting that *TSA* must provide evidence as to significant burden). That includes demonstrating that use of one or more of these methods would make redactions vulnerable to reversal, a proposition for which the TSA has provided no evidence in any of its filings to date.[9]

Lastly, the TSA faults Sai for allegedly failing to rebut its "showing" that redaction by editing would result in creation of a new record. As an initial matter, the TSA's "showing" consists of half of a footnoted statement and a citation to a Supreme Court case that, while standing for an abstract principle, provides nothing to suggest that the principle applies to this case. Nor does the

___

[8] While it is not entirely clear whether the capacity to redact is a matter of ready reproducibility or technical feasibility, the reality is that redaction according to the methods specified is possible under either standard.

[9] The one report on this, DHS OIG's January 2010 report "TSA's Breach of Sensitive Security Information", OIG-10-37, implicates exclusively human errors–not technical defects. Notably, "Failure to Follow OSSI Procedures Resulted in an Improper Document Redaction." https://www.oig.dhs.gov/sites/default/files/asserts/Mgmt/OIG_10-37_Jan10.pdf

TSA cite any additional cases to fill this void in its most recent filing. Moreover, the TSA entirely fails to acknowledge Sai's detailed, paragraph-long treatment of this issue in each of their most recent filings. Sai will repeat only the bottom line here: Manual redaction of the records in their original formats does not constitute creation of a new document except in the way that *any* redaction method does.

*Finally*, the TSA's failure to recognize the appropriate standard and its distortions of Sai's arguments dovetail with its complete failure to acknowledge relevant precedent. In particular, *Public.Resource.org*, 78 F. Supp. 3d at 1262—relied on extensively by Sai, but not even mentioned in the TSA's briefing—convincingly resolves the reproducibility issue. The case addressed a very similar set of circumstances: (1) the agency received a request for the IRS to produce certain documents in their native (MeF) format, and the IRS refused, *id.* at 1263; (2) the documents were indisputably kept in their native format in the normal course of business, *id.* at 1265; (3) the agency relied on an existing process that transformed documents from their native format into TIF files for redaction, and then to PDFs for release, *id.* at 1263; and (4) the agency contended that its existing processes did not allow for redaction in native formats and that it would have to "shift significant resources, . . . develop a new protocol, train its employees, and develop the technical capacity" in order to do so, and that this administrative burden meant that records were not readily reproducible in the requested format. *Id.* at 1263–64. The court determined that the records were readily reproducible, given that: (1) if the need to "develop new protocols and train staff" could excuse compliance, it could be raised "anytime there was a request for production in a format that the agency has not accommodated before"; and (2) an agency cannot defeat a format request through "rel[iance] on its own prior practices that are inconsistent with the E-FOIA amendments." *Id.* at 1266–67. The situation is not different here.

## II.  THE TSA CANNOT DEMONSTRATE THAT IT HAS CONDUCTED PROPER SEARCHES.

It is well settled under FOIA jurisprudence that the TSA must demonstrate that it has undertaken a search that was reasonably calculated to locate all responsive records to a FOIA request.  *See, e.g., Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) ("To prevail on summary judgment [as to adequacy of search] . . . the defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'") (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  The burden is squarely on the government agency to demonstrate "beyond [a] material doubt," that it has performed an adequate search for records responsive to the FOIA request.  *Weisberg*, 705 F.2d at 1351; *See also, e.g., U.S Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).

An agency may rely on an affidavit to discharge its burden, provided that the affidavit is "reasonably detailed" and "set[s] forth the search terms and type of search performed," so as to show that "all files likely to contain responsive materials . . . were searched."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Affidavits cannot be "so general as to raise a serious doubt whether the [agency] conducted a reasonably thorough search of its records."  *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 120 (D.D.C. 2005) (quoting *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).

Here, the TSA has failed to satisfy a fundamental obligation under FOIA: It has failed to address the deficiencies raised by Sai regarding the adequacy of its search and has therefore failed to "show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents."  *Morley*, 508 F.3d at 1114 (quoting *Weisberg*, 705 F.2d at 1351).

17

### A.  The Miller Declaration Does Not Support The Sufficiency of the TSA's Search.

The Miller Declaration fails to meet applicable standards for the sufficiency of a declaration in support of summary judgment in a FOIA action.   The TSA attempts to mischaracterize Sai's argument by focusing only on their acknowledgement that Ms. Miller did not conduct these searches herself.   While it is undisputed that she did not, that fact is not dispositive on its own, and therefore Sai does not rest their argument solely on that point.   Rather, Sai argues that the Miller Declaration does not adequately state grounds sufficient to show that the searches conducted in response to their FOIA requests were "reasonably calculated to uncover *all* relevant documents." (emphasis added).

In its Opposition, the TSA fails to address case law cited by Sai finding an agency's declaration to be inadequate when "[it] does not outline the search methods undertaken by the [agency] to respond to the plaintiff's FOIA request, [or] who would have conducted the searches." *Prison Legal News v. Lappin*, 603 F. Supp. 2d 124, 127 (D.D.C. 2009).   Moreover, the court in *Prison Legal News* acknowledged the accuracy of the plaintiff's argument that declarant did not "indicate how he is personally aware of the search procedures or that he knows they were followed by each of the [agency's] entities tasked with responding to th[e] request." *Id.*   Ultimately, the court determined that "[a]ll of these deficiencies undermine[d] the sufficiency of the affidavit." *Id.*

Moreover, the cases cited in its Opposition require more than the TSA purports that they do and more than the Miller Declaration can satisfy.   For example, in *Barnard v. Dep't of Homeland Sec.*, the court found that because the declarant was "familiar with the processes used to search for the records at issue, *and because he ha[d] reviewed the records himself*," he was competent to testify.   531 F. Supp. 2d 131, 138 (D.D.C. 2008) (emphasis added).   In *Johnson v.*

*United States*, the court was satisfied with the agency's declarant because her testimony was based on "*[her] review of the official files and records*" as well as "[her] own personal knowledge." 239 F. Supp. 3d 38, 43 (D.D.C. 2017) (emphasis added).  In *Inst. for Policy Studies v. CIA*, the court found that the agency's declarant did have personal knowledge based on defendant's assertion that "[her] review of the records satisfie[d] the personal knowledge requirement . . . ."  885 F. Supp. 2d 120, 134 (D.D.C. 2012).

The Miller Declaration makes clear that the only factor supporting her claim of personal knowledge is that, since May 2018—years after the searches in response to Sai's requests were completed—she moved into a role that involves supervising FOIA requests for TSA and familiarity with the FOIA process.  However, that role is not enough.  In fact, the TSA fails to point to any case where post-hoc supervision and familiarity, without anything more, provides an adequate basis for an affidavit in support of an agency's motion for summary judgment on a FOIA request.  Therefore, the Miller Declaration does not, and cannot, show that the searches conducted in response to Plaintiff's FOIA Requests were "reasonably calculated to uncover all relevant documents" and, thus, summary judgment must be denied.

### B.  The TSA Fails To Prove That Its Searches Are Adequate.

The TSA still fails to provide a "reasonably detailed" description of its searches, as "is necessary to afford [Plaintiff] an opportunity to challenge the adequacy of the search and to allow [the Court] to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68.  First, the TSA's attempt to explain an inconsistent search methodology as "obvious" is, instead, nonsensical.  And its second response on the inadequacy claim disregards the entirety of what case law requires in a *Vaughn* affidavit, and instead focuses only on the results yielded.  By not addressing and/or correcting these obvious deficiencies, the TSA has failed to

satisfy its burden of proving to the Court that the searches it conducted are sufficient to warrant summary judgment.  *Id.*

With respect to its inconsistent search methodology, the TSA asserts that the reasoning for the inconsistency is "obvious" and attempts to portray Sai's argument as illogical by touting the example of not "us[ing] the terms 'Boston' or 'SFO' in searching for records about the incident at ORD."  Reply in Supp. of Def.'s Renewed Mot. for Summ. J. & Opp. to Pls.'s Cross-Mot. for Partial Summ. J at 16-17, ECF No. 189 ("ECF No. 189").  Yet, Sai never made the argument that TSA must conduct searches in that precise way.  Rather, Sai's argument is that TSA has failed to explain why it did not use the same search terms and methodologies across different program offices and within the same program office but among different databases.  *See Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 24–25 (D.D.C. 2018) (denying summary judgment where the agency failed to explain its inconsistent search methodology); *see also Tushnet v. ICE*, 246 F. Supp. 3d 422, 434–35 (D.D.C. 2017) (denying summary judgment where ICE declaration "fall[s] short of explaining why such disparate searches were reasonable for particular offices"); *James Madison Project v. Dep't of State*, 235 F. Supp. 3d 161, 169 (D.D.C. 2017) ("[T]he agency misses the point: the problem with the declaration . . . is that . . . the searches are deficient because the agency—for no discernable reason—searched different data sets using different search terms . . . even within the same bureau or office. So the agency must do more to explain its methodology, and it must explain its reasoning more clearly.").

The TSA also attempts to confuse the issue by mischaracterizing Sai's argument about what needs to be addressed by a supporting declaration.  Rather than address the totality of Sai's argument, the TSA instead focuses so narrowly on only one aspect of the total claim and that it fails to address the other aspects of what is required of an agency in the FOIA process.  In addition

to explaining what results a search yielded, a supporting declaration must also outline the search terms that were used, the type of search that was performed, and which files were searched.  *See Trautman v. DOJ*, 317 F. Supp. 3d 405, 409 (D.D.C. 2018) ("The agency must submit '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched . . . .'").  "If 'the agency affidavits . . . do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [a plaintiff] to challenge the procedures utilized,' then genuine issues of material fact may exist about the adequacy of the agency's search."  *Id.* (quoting *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980)); *see also Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 403–04 (D.C. Cir. 2017) (collecting cases).  Without an explanation from TSA regarding the clear inconsistencies in its search methodology and deficiencies in its supporting declaration, the Court does not have adequate information about the searches that were conducted, and therefore the adequacy of the results that those searches yielded, to allow an assessment of their sufficiency.

### C.  The TSA Has Failed to Prove That Its Searches Cover the Relevant Timeframe.

Again, the TSA has failed to provide this Court with an exact and direct response to what it was ordered to answer: "Did the TSA's searches for records responsive to the BOS and SFO Requests and Re-Requests cover the relevant timeframe, that is, from the date of the relevant incident to the date the relevant search commenced."  ECF No. 172 at 69.  The TSA acknowledges, in the Miller Declaration, that it "had not submitted evidence sufficient for the Court to determine when it commenced [these] searches."  ECF No. 174-3 at ¶ 58.  Yet, the Miller Declaration does not contain any new information addressing this evidentiary deficiency.  *See id.* at ¶ 58–64.

21

Therefore, Sai, and the Court, are still faced with the problem of not knowing when the TSA "commenced each of the relevant searches" and, thus, cannot know whether the TSA "searched for records covering the relevant time frame."  ECF No. 172 at 31, 69.

The agency's response on this argument, again, does not address the heart of the issue. Rather than provide Sai and the Court with the information required to determine if the searches were adequate—information that only the TSA has access to—the agency focuses on the offices that issued a "second tasking" and the BOS and SFO Re-Requests.  However, the problem the TSA faces is providing sufficient evidence to show when these searches commenced.  It is not enough to provide a list of when the various offices were tasked because the relevant timeframe requires the TSA to search "to the date the relevant search **commenced**."  *Id.* at 69.  And as the Miller Declaration admits, "the FOIA Branch does not have a date certain for when each search commenced," ECF No. 174-3 ¶ 59 n.11, so instead has attempted to convince the Court that a date range (from tasking date to signed response date) is an adequate substitute without any explanation as to why that substitution is appropriate or adequate.

As Sai and the Court have already noted, the TSA cannot carry its burden of showing that its searches for the records requested covered the relevant timeframe without providing sufficient evidence of when it commenced each of the searches at issue.  Without this information, which only the TSA has, summary judgment must be denied.  FRCP 56(d).

### D.  The TSA Is Required To Search The Four Offices Identified By The Court.

In its Reply and Opposition, the TSA argues that the Miller Declaration "provides a highly detailed explanation as to why TSA did not need to search each of the four identified offices." ECF No. 189 at 20–21.  However, what the TSA fails to acknowledge is that the Miller Declaration does not address the specific deficiencies that the Court highlighted.  *See* ECF No. 172 at 29–31.

The Miller Declaration does not provide a responsive explanation to the Court's Opinion, which it is required to do in order to survive on its renewed summary judgment motion.

In particular, for example, the Court noted that "both the BOS and SFO Requests expressly sought 'all documents and communication[s] related to or responding to' the requests, 'whether internal or external'" and that those requests can "reasonably be construed to encompass FOIA processing records" and records "applicable to the FOIA process itself." *Id.* at 29–30. The TSA, rather than address this point, responded that the FOIA Branch "tasked the offices determined likely to have such responsive records, which would have been created in connection with the underlying incident itself, rather than records created in the collateral effort to gather those records about the underlying incident." ECF No. 174-3 at ¶ 45. But the Court specifically asked the TSA to address why the FOIA Branch itself was not searched for records pertaining to the FOIA process, and the TSA neglected to provide that explanation.

### III. The TSA Has Not Proven Entitlement To, and Sai Has Not Moved For, Full Summary Judgment

The TSA moved for full summary judgment. As explained in Sai's Reply, it is not entitled to any summary judgment relief, let alone complete relief. Sai's cross-motion is for *partial* summary judgment, and for discovery. This cross-motion deliberately did not request full summary judgment on certain issues, because Sai believes that they are not yet ripe (an issue which may be cured through FRCP 56(d) discovery), or that they involve genuinely disputed material facts.

These open issues include, but are not limited to:

1. metadata

2. email chains

3. email attachments

4.  records stemming from inter/intra-agency referrals

5.  proactive disclosures under 552(a)(1, 2)

Sai emphasizes that this cross-motion does not address the above issues because it is premature for *either* party to request summary judgment on them.

## CONCLUSION

For the foregoing reasons, the Court should deny summary judgment in favor of the TSA and enter partial summary judgment in favor of Sai.

By: /s/ Jeffrey T. Green
    Jeffrey T. Green, D.C. Bar No. 426747
    Chike Croslin, USDC D.C. Bar No.   D00514
    SIDLEY AUSTIN LLP
    1501 K Street, N.W.
    Washington, D.C. 20005 jgreen@sidley.com
    Telephone: (202) 736-8000
    Facsimile: (202) 736-8711

    *Counsel for Plaintiff*