UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAI,<br><br>Plaintiff,<br><br>v.<br><br>TRANSPORTATION SECURITY ADMINISTRATION,<br><br>Defendant. | Civil Action No. 14-0403 (RDM) |

**DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents ..... i

Table of Authorities ..... ii

Background ..... 1

Legal Standard ..... 2

Argument ..... 3

I. The TSA Cannot Readily Produce Non-Rasterized PDFs. ..... 3

A. TSA's current software cannot produce non-rasterized copies of the records, nor is TSA required to create new copies. ..... 4

B. The cost and time spent processing through Adobe Acrobat would be unduly burdensome. ..... 5

C. Adobe Acrobat or other processing software presents security risks. ..... 7

Conclusion ..... 8

## TABLE OF AUTHORITIES

**Cases**

*Aguiar v. DEA*, 992 F.3d 1108, 1113 (D.C. Cir. 2021) .................... 5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) .................... 2

*Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011) .................... 3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .................... 2

*Citizens for Resp. & Ethics in Wash.* ("*CREW*") *v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) .................... 3

*Ctr. For Immigration Studies v. U.S. Citizenship & Immigration Servs.*, 628 F. Supp. 3d 266, 271 (D.D.C. 2022) .................... 6

*Defs. of Wildlife v. U.S. Dep't of Interior*, 314 F.Supp. 2d 1, 10 (D.D.C. 2004).................... 5

*Hawkinson v. Immigration & Customs Enf't*, 554 F. Supp. 3d 253, 272 n.5 (D. Mass 2021) ....... 5

*Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).................... 3

*Long v. Immigration & Customs Enforcement*, 149 F. Supp. 3d 39, 56 (D.D.C. 2015).................... 6

*McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983) .................... 3

*Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) .................... 3

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).................... 3

*Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 409 (D.C. Cir. 2020).................... 5

*Sai v. Tansp. Sec. Admin*, 315 F. Supp. 3d 218, 239 (D.D.C. 2018) .................... 2

*Sai v. Transp. Sec. Admin.*, 466 F. Supp. 3d 35, 49 (D.D.C. 2020).................... 2, 4

*Scudder v. CIA*, 25 F. Supp. 3d 19, 31, 32-33 (D.D.C. 2014) .................... 4

*Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994) .................... 2

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).................... 3

**Statutes**

5 U.S.C. § 552(a)(3)(B) .................................................................................................. 3, 4

Pub. L. No. 104-231, 110 Stat. 3048 (1996)...................................................................... 3

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................... 2

Defendant, the Transportation Security Administration ("TSA"), hereby renews its motion for summary judgment on Plaintiff Sai's sole remaining claim under the Freedom of Information Act ("FOIA"). In a memorandum opinion dated May 29, 2020, the Court granted in part and denied in part without prejudice Defendant's second motion for summary judgment. Thereafter, the parties had resolved all remaining issues in this lawsuit save for one—whether the TSA was required to release the records in "fully digital text PDFs rather than scans or rasterizations." For the following reasons, and those contained within the accompanying declaration, the Court should grant summary judgment in favor of TSA on this last remaining issue, as it has now been fully developed.

## BACKGROUND

The background of this case and of Sai's FOIA requests is recounted in the Court's memorandum opinions dated May 24, 2018, ECF No. 172, and May 29, 2020, ECF No. 196, and TSA respectfully refers the Court to those opinions for a full description of the underlying facts. To briefly summarize, this case involves six FOIA requests submitted by Sai: (1) a request dated January 28, 2013, seeking records about an incident involving Sai at the security checkpoint at Boston Logan International Airport ("BOS Request"), ECF No. 99-3 at 50–51; (2) a request dated February 22, 2013, seeking any contract/agreement with other agencies regarding surveillance, or maintenance of surveillance footage, at Logan airport ("CCTV Request"), *id.* at 78; (3) a request dated March 15, 2013, seeking records about an incident involving Sai at the security checkpoint at San Francisco International Airport ("SFO Request"), *id.* at 85–86; (4) a very broad request seeking all TSA policies and procedures not already posted in the TSA's electronic reading room ("Policies Request"), *id.* at 125–28; and (5) two requests that seek generally the same information as the BOS and SFO Requests but covering the period of time after those requests were filed ("BOS and SFO ReRequests"). Only the Policies Request remains at issue.

After extensive proceedings, the TSA has now twice moved for summary judgment, *see* ECF Nos. 99, 174, and the Court largely ruled for TSA on Sai's FOIA claims. The Court concluded during the second round, however, that the record was insufficiently developed or argued to support full summary judgment in the TSA's favor on the issue of what format the Policies Request must be produced in.[1] The Court found that "the TSA had failed to demonstrate that the requested documents were not 'readily reproducible' as the requested 'fully digital text PDFs rather than scans or rasterizations.'" *Sai v. Transp. Sec. Admin.*, 466 F. Supp. 3d 35, 49 (D.D.C. 2020) ("*Sai II"*) (citing *Sai v. Tansp. Sec. Admin*, 315 F. Supp. 3d 218, 239 (D.D.C. 2018) ("*Sai I"*))). Defendant's renewed motion and supplemental declaration address this final open issue in this now decade-old case.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The "vast majority" of FOIA cases are decided on motions for summary

[1] Although the Court identified other issues, the Parties were able to reach informal agreement regarding the remainder and Sai presently only challenges the rasterization issue. *See* Joint Status Report, ECF No. 253 (May 21, 2026).

judgment. *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Resp. & Ethics in Wash.* ("*CREW*") *v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007).

To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137. "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## ARGUMENT

### I. <u>The TSA Cannot Readily Produce Non-Rasterized PDFs.</u>

The TSA has already produced the records that Sai seeks in this case. Sai, however, argues an entitlement to the production of those records in a different format of Sai's choosing. As amended by E-FOIA, Pub. L. No. 104-231, 110 Stat. 3048 (1996), the FOIA statute requires agencies to "provide the [requested] record[s] in any form or format requested by the [requester]," but only "if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). Whether a document is "readily reproducible" in a requested format is a "fact-based determination" with the burden on the defendant to show that the records were not "readily

reproducible" in the format requested. *Scudder v. CIA*, 25 F. Supp. 3d 19, 31, 32-33 (D.D.C. 2014). Courts are required to "accord substantial weight to an affidavit of an agency concerning the agency's determination as to . . . reproducibility." *Id.* § 552(a)(4)(B). As this Court recognized, E-FOIA does not impose an absolute obligation on agencies to "comply with every request for release of records in every conceivable format." *Sai I,* 315 F. Supp. 3d at 238. Simply put, an agency need only release records in a form or format that is "readily reproducible," 5 U.S.C. § 552(a)(3)(B), and "technically feasible," *id.* § 552(a)(4)(B).

The format that Sai demands, which is "fully digital text PDFs," or "non-rasterized PDFs," *Sai II* at 49, is unduly burdensome to the TSA and the agency is therefore not obligated to re-produce the records in this requested format. The Court noted that in order to show it has carried its burden as to this issue, the TSA "should provide the Court with an expert declaration addressing the technical feasibility of the request, the specific cost (in dollars) and burdens (in time) of satisfying the request, the extent of the necessary redactions, and the security risks, if any, posed by using Adobe Acrobat, as Sai suggests, May 8, 2020 Hrg. Tr. (Rough at 19), or some other software to release redacted, non-rasterized versions of the records at issue." *Sai II*, 466 F. Supp. 3d at 51. As described in more depth below, the TSA has done precisely so.

**A. TSA's current software cannot produce non-rasterized copies of the records, nor is TSA required to create new copies.**

First, the records Sai requested via the Policies Request are not readily reproducible in the manner Sai proposes. *See* Callahan Declaration (Callahan Decl.) ¶¶ 7-9. Kerry Callahan, Acting FOIA Officer for the TSA, explains that "TSA's current FOIA processing system, SecureRelease, does not have the capability to produce records as fully digital text PDFs," nor does it "have the capability to reproduce the records as non-rasterized PDFs." *Id.* ¶¶ 7, 10. Therefore, processing as such would be out of the ordinary course of business, which the agency is not required to do. *See*

*Hawkinson v. Immigration & Customs Enf't*, 554 F. Supp. 3d 253, 272 n.5 (D. Mass 2021) (declining Plaintiff's request that the Court require the agency produce records in native format where agency's processing software did not possess such capability).

Here, where Plaintiff demands that the TSA produce the records in a format it does not currently possess them in, Plaintiff inappropriately asks the TSA to create new records. Callahan Decl. ¶ 10 ("an obligation to provide its response as non-rasterized PDFs would require the time and expense of creating new versions of the existing documents."). The FOIA "only requires disclosure of documents that already exist, not the creation of new records not otherwise in the agency's possession." *See Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 409 (D.C. Cir. 2020). "Nothing in § 552(a)(3)(B)'s purpose or history suggests that Congress intended to obligate agencies to organize information contained in a record in a FOIA requestor's preferred way solely for the requestor's convenience." *Aguiar v. DEA*, 992 F.3d 1108, 1113 (D.C. Cir. 2021) (interpreting the E-FOIA amendments). Here, the TSA has produced the records to Sai in the format that such records were available in when processed for production via SecureRelease. *See generally* Declaration of Regina McCoy, ECF No. 99-3; *see also Defs. of Wildlife v. U.S. Dep't of Interior*, 314 F.Supp. 2d 1, 10 (D.D.C. 2004) ("it would be illogical and wasteful to require the agency to produce multiple copies of the same document"). It is not required to do more.

**B. The cost and time spent processing through Adobe Acrobat would be unduly burdensome.**

Sai's request, that the TSA re-format its previous production of documents responsive to the Policies Request, also would be unduly burdensome to the TSA. "Among the factors that a court may consider in assessing the claimed burden are the amount of time, expense, and personnel that would be required to complete document searches and production, as well as whether the agency has the existing technology or would have to purchase new technology to perform those

tasks." *Long v. Immigration & Customs Enforcement*, 149 F. Supp. 3d 39, 56 (D.D.C. 2015). As explained above, the TSA's current software, SecureRelease, cannot produce the records in the format request by Sai. *See Ctr. For Immigration Studies v. U.S. Citizenship & Immigration Servs.*, 628 F. Supp. 3d 266, 271 (D.D.C. 2022) ("a requester oversteps when it seeks information in a format that the agency does not use or for which the agency lacks the necessary technology.").

To attempt to potentially produce the documents in the form requested by Sai, which the TSA is not even certain would result in the format Sai seeks, the TSA would be forced to procure new expensive programming. Callahan Decl. ¶¶ 8-9. The agency estimates that attempted procurement of software would likely entail a minimum of 50 employee hours to ensure market research, securing quotes, and advancing processing of the procurement documentation. *Id.* ¶ 9. Even assuming the TSA could surmount the internal approvals required to secure an investment for new technology pursuant to the Federal Information Technology Acquisition Reform Act, the agency conservatively estimates $4,500 for procurement costs alone (excluding the cost of the software itself). *Id*. The agency would then be required to train its processors how to utilize the new program and undertake another review to process the records. Accounting for the number of FOIA analysists available, a 40-hour workweek, a salary level approximately around the GS-13 level, the time it would take per analyst, the high volume of records responsive to Sai's request, the process utilized for review, time per document to complete production, and estimated time to apply redactions, among other necessary processing tasks, Callahan conservatively estimates Sai's request would cost the agency around $50,596. *Id.* ¶¶ 10-18. This cost, both in terms of time spent by analysts and dollars, poses a significant burden to the TSA. The FOIA does not demand that the agency go to such great lengths.

### C. Adobe Acrobat or other processing software presents security risks.

Further, there are safety risks associated with the TSA's use of Adobe Acrobat software to process the records in a non-rasterized format. Callahan Decl. ¶ 19. There is a reason why FOIA processors utilize certain software. Callahan describes that "record-processing provided by SecureRelease ensures that various forms of latent data or metadata in the PDF that could be used to shed light about the text that has been redacted, despite the proper application of a redaction, is eliminated from the document before release." *Id.* ¶ 20. Beyond the monetary expense described above, this ability to potentially look beyond redactions applied by the Agency forms the crux of the TSA's concerns in this case. TSA uses the SecureRelease software because it specifically mitigates against this concern. Whereas "[i]n contrast[.] . . a non-rasterized PDF retains additional forms of data that could shed light about the text behind a redaction on a page, even when redactions are applied to that text." *Id.* ¶ 21. Callahan notes that the TSA follows a National Security Agency's Information Assurance Directorate report, which recommends against using tools such as Microsoft Word and other office tools, which "contain substantial hidden information about the document" rendering the "redacted" document just "as sensitive as the original document[.]" *Id.* ¶ 22.

Callahan also points to a 2023 report of a study at the University of Illinois, which observed that "rasterizing a document (converting the PDF to an image) increases the security of redactions" and "rasterization appear to be effective defense against deredaction." *Id.* ¶ 24. Whereas, in stark contrast, a non-rasterized document "contains text data for both the font and the layout of each character (*glyph*) on the page." *Id.* Callahan goes into great depth in her declaration to explain why producing the documents in a non-rasterized PDF format results in less secure redactions in those documents that would lead to privacy and security concerns once the documents are released. *Id.*

The agency has thus carried its burden of demonstrating that the records are not readily producible in the format Sai requests.

## CONCLUSION

For these reasons, Defendant's Renewed Motion for Summary Judgment should be granted and judgment entered in its favor.

Dated: August 31, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Tara Derbisz*

TARA DERBISZ
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 809-0784
Tara.derbisz@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAI,<br><br>Plaintiff,<br><br>v.<br><br>TRANSPORTATION SECURITY ADMINISTRATION,<br><br>Defendant. | Civil Action No. 14-0403 (RDM) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's Renewed Motion for Summary Judgment, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that the case be dismissed and judgment is entered in favor of Defendant

SO ORDERED:

__________________
Date

__________________________________
Randolph D. Moss
UNITED STATES DISTRICT JUDGE