KUNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAI,<br><br>Plaintiff<br><br>*v.*<br><br>TRANSPORTATION SECURITY ADMINISTRATION,<br><br>Defendant | Case 1:14-cv-00403-RDM |

**DECLARATION OF KERRY CALLAHAN**

I, Kerry Calahan, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the Acting Freedom of Information Act (FOIA) Officer for the Transportation Security Administration (TSA), a component agency of the U.S. Department of Homeland Security (DHS). I have held this position since January 2025. Prior to my current position, I was Operations Manager in TSA's FOIA Branch from September 2018 to January 2025.

2. As the FOIA Officer, I am responsible for overseeing the processing of all requests made to TSA under FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a; for overseeing the initiation of searches for records responsive to such requests; and for supervising the determination of what records or portions thereof should be released.

3. Additionally, as FOIA Officer I am familiar with TSA's obligations under FOIA and the Privacy Act, including the various exemptions thereunder. I am also familiar with TSA's records systems.

4. The statements made in this declaration are based on my personal knowledge, information made available to me in the performance of my official duties, and conclusions and determinations reached and made in accordance therewith.

5. I understand that Plaintiff has sought certain records ("the records") in this case to be released in PDF format with a particular attribute: namely, as non-rasterized PDFs, also described as fully digital text PDFs.[1] I understand that the last remaining request at issue that is subject to this demand has been referred to in this litigation as the Policies Request, which TSA has designated with the reference numbers 2013-TSFO-00239 and 2015-TSLI-00004.

6. This declaration will address:

a. The technical feasibility of readily reproducing the records at issue as fully digital text PDFs;

b. The specific cost in dollars and burdens in time of satisfying the formatting request;

c. The extent of necessary redactions; and

d. The security risks posed by using Adobe Acrobat or other software to release redacted, non-rasterized version of the records at issue.

**A. Technical Feasibility of Readily Reproducing Records as Fully Digital Text PDFs**

7. TSA's current FOIA processing system, SecureRelease, does not have the capability to process and produce records as fully digital text PDFs. As such, TSA does not have the technical ability to readily reproduce the records that remain at issue in this case. Any such processing would be out of the ordinary course of business for TSA and its FOIA Office, requiring additional time and resources.

[1] This declaration will use the terms "non-rasterized PDFs" and "fully digital text PDFs" interchangeably. Per Plaintiff's court filings, both describe Plaintiffs' desired format.

8. In order to reproduce the records gathered in response to the Policies Request in as non-rasterized PDFs, TSA would have to return to the records collected, identify those designated as responsive, and then generate a non-rasterized PDF version for each document for further processing. FOIA Branch believes that there are 53 documents that were identified as responsive to the Policies Request. It is unclear whether there is an original version of all of those documents that is suitable for conversion into a non-rasterized PDF; as a result, TSA faces the prospect that some documents cannot be provided as a non-rasterized PDF as a threshold matter because the source material would not allow for that conversion (e.g., some records may have been initially received by FOIA Branch as rasterized PDFs).

9. This Declaration assumes that processing the source documents in Adobe Acrobat using that program's built-in functionality would end with Adobe Acrobat generating a non-rasterized PDF that would satisfy plaintiff. There may be some dispute whether Adobe Acrobat's redaction function will yield a non-rasterized PDF as a technical matter.[2] If Plaintiff takes the position that processing the documents at issue in the Policies Request via Adobe Acrobat and its built-in redaction function will not generate a records in a satisfactory format, TSA will have to identify and procure a license to an alternative program for completing these redactions, and then ensure the analyst(s) assign to the re-processing effort are more fulsomely trained than they are at present. I understand that the procurement effort for new software would likely entail a minimum of 50 hours of employee time at the K-band level, equivalent to GS-15, which could be conservatively estimated as costing $91.02/hour, before accounting for the cost of the software itself; that procurement effort entail market research, securing quotes, and advancing the

[2] *See* Bland, Iler, & Levchenko, *Proceedings on Privacy Enhancing Technologies 2023(3)*, at 46, Table 2 (noting that Adobe "claimed they do not use a raster approach" in making redactions, but finding that "empirically this was not the case").

processing of the procurement documentation. The burden of additional reviews and approvals required by the Federal Information Technology Acquisition Reform Act,[3] which requires a Chief Information Officer to approve information technology investments, would be difficult to quantify in the abstract. Ultimately, the initial procurement effort to initiate the acquisition of a non-rasterizing PDF processing program other than Adobe Acrobat would be at least $4,550.

**B. Re-Processing Burdens Quantified in Time and Dollars.**

10. As noted above, SecureRelease, the system that TSA has already paid for, trained its employees on, and for which TSA has an active contract with Deloitte for technical assistance and support, does not have the technical capability to reproduce the records as non-rasterized PDFs. As a result, similar to other DHS components that use SecureRelease, as well as other agencies, an obligation to provide its response as non-rasterized PDFs would require the time and expense of creating new versions of the existing documents.

11. Based on my calculations and predictions, TSA's FOIA office would need to devote the following money and time to the effort of reproducing the records.

12. FOIA Branch currently has 5 analysts available to perform FOIA intake, tasking, review, and processing. Those FOIA analysts are available during standard 40-hour workweeks, and are typically at the I-band salary level, which is equivalent to the GS-13 salary level. Using the middle of the I-band (Step 5), the cost of an hour of FOIA analyst time thus roughly approximates to $66.14.

13. FOIA Branch currently has more than 4000 pending requests. Typically, FOIA Branch receives 43 new FOIA requests per week. Requests that are in litigation are prioritized

[3] Pub. L. 113-291, Division A, Title VIII, Subtitle D, 128 Stat. 3292, 3438–3450 (codified at 40 U.S.C. § 11301 (note), et seq.).

and there are at least 12 requests in litigation for which FOIA Branch must prioritize targeted monthly processing obligations.

14. To generate non-rasterized PDFs for the Policies Request outside of FOIA Branch's normal processing steps, TSA would need to assign at least 1 analyst. TSA would need to ensure that individuals participating in this reprocessing spend at least one hour being trained on the steps necessary to perform redactions in Adobe Acrobat, incurring an estimated cost of $66.14.

15. As noted earlier, there are 53 records responsive to the Policies Request. An analyst will be required to identify a responsive record and correlate it back to a source document, and then convert that source document to a non-rasterized PDF (assuming a native or non-rasterized original record exists). I estimate that this process may take five minutes per document, as TSA made four separate productions of records responsive to the Policies Request. This effort will entail 4.25 hours of analyst time at an overall cost of $280.

16. Once non-rasterized versions of the responsive records have been created, TSA will have to process the records, manually applying redactions on a page-by-page basis to each record. In response to the Policies Request, TSA produced 3039 pages that were Released in Part (RIP), which will necessitate at least one redaction, but likely more. I estimate that analysts will need to spend at least ten minutes transferring redactions applied to each of these 3039 pages to the corresponding page of the newly generated version(s), totaling 506.5 hours of analyst time, with an overall estimated cost of $33,500 for initial processing of the newly generated versions of the records at issue. The process of transferring redactions made in SecureRelease to the corresponding page in a new version of the same record is complicated by the need to annotate the redaction in the new document with the type of redaction it is (i.e., which FOIA exemption it is

based on); my understanding is that this kind of annotation for the redaction needs to be added on a redaction-by-redaction basis.

17. Because this effort would entail a new process that FOIA Branch's analysts are unfamiliar with, and the volume of the effort along with its repetitive nature necessarily introduces opportunities for mistakes, it will be necessary for FOIA Branch to conduct a quality-control assessment of the re-processing effort described above. This would entail checking the newly generated pages of each document against the prior version to ensure that the redactions were properly transferred to the new version of the record, and also that all the transferred redactions in the newly generated version were themselves properly applied via the required steps in Adobe Acrobat. I estimate that FOIA Branch reviewers would need to devote on average the equivalent of five minutes per page towards ensuring that the redactions were properly transferred, annotated, and applied via Adobe Acrobat's built-in redaction function, totaling 253.25 hours of time. The personnel who would perform this quality-control assessment are at the I-band level, equivalent to the GS-13, and for this estimate the median Step of the I-band will be used, yielding an hourly cost of $66.14. The quality-control assessment effort would therefore entail an expense of $16,750.

18. In light of the foregoing, generating non-rasterized PDFs for the Policies Request using TSA's existing access to Adobe Acrobat would require approximately 760 hours of effort, with a cost value of at least $50,596.

**C. Security Risks Posed by Using Adobe Acrobat or Other Software**

19. TSA has reason to believe that even properly applied redactions in Adobe Acrobat to non-rasterized PDFs entails the possibility that the redactions could be compromised, creating a security risk, particularly where the redactions include those that are meant to safeguard Sensitive Security Information ("SSI"), which is a statutorily created category of sensitive-but-unclassified

information that, if compromised, would entail a risk to transportation security. *See* 49 U.S.C. § 114(r); 49 C.F.R. part 1520. TSA makes SSI redactions pursuant to Exemption 3, and there are redactions based on Exemption 3 in the records provided in response to the Policies Request.

20. The record-processing provided by SecureRelease ensures that various forms of latent data or metadata in the PDF that could be used to shed light about the text that has been redacted, despite the proper application of a redaction, is eliminated from the document before release.

21. In contrast, I understand that a non-rasterized PDF retains additional forms of data that could shed light about the text behind a redaction on a page, even when redactions are applied to that text.

22. The National Security Agency's Information Assurance Directorate issued a 2005 report entitled "Redacting with Confidence: How to Safely Publish Sanitized Reports Converted From Word to PDF."[4] That report recommends that when converting a native document such as Word to PDF, the first step in the conversion process should be to replace the text to be redacted with placeholder characters, as "most office tools, such as MS Word, contain substantial hidden information about the document" which "is often as sensitive as the original document, and its presence in downgraded or sanitized documents has historically led to compromise."[5] Further, some PDF conversion software "has the ability to automatically copy document meta-data and properties from Word to PDF."[6] This feature, among others, must be disabled when downgrading or sanitizing documents. According to the NSA, "information hidden or covered in a computer document can almost always be recovered" with sufficient resources and effort, such that "[t]he

[4] https://sgp.fas.org/othergov/dod/nsa-redact.pdf
[5] *Id*. at 3.
[6] *Id*. at 11.

way to avoid exposure is to ensure that sensitive information is not just visually hidden or made illegible, but is actually removed from the original document."[7] While NSA therefore recommends replacing text that needs to be redacted as the first step in a longer process, that approach is incompatible with the requirements of FOIA, as it effectively necessitates the creation of a new document (by requiring the alteration the content of that document from its original).

23. Because FOIA does not allow for the modification of an original document for production purposes, any alternative method for protecting information that must be withheld must be as secure as possible.

24. I am aware of a 2023 report of a study at the University of Illinois regarding the reliability of various approaches to redacting documents, particularly as measured against efforts to undo or get behind those redactions, which observed that "*rasterizing* a document (converting the PDF to an image) increases the security of redactions" and that "[r]asterization appears to be an effective defense against deredaction."[8] In contrast, a non-rasterized document "contains text data for both the font and the layout of each character (*glyph*) on the page."[9] The report indicates that because redaction tools replace the redacted text with a single large character "shift" of the same width as the characters in the redacted text, the space required for those redacted letters can be calculated and, when that value is evaluated against character-shift values from various dictionaries or word sets (particularly using artificial intelligence), potential word-matches for the redacted test can be identified, thereby undermining the reliability of the redaction.[10] While redactions to a PDF could theoretically "reposition glyphs in such a way as to destroy accurate width information" for the redacted characters, thereby reducing the risk of redactions being

---

[7] *Id.* at 4.
[8] Bland, Iler, & Levchenko, *Proceedings on Privacy Enhancing Technologies 2023(3)*, at 43, 53.
[9] *Id.* at 44
[10] *Id*. at 44.

compromised, the study found that "this is almost never the case for commonly accessible redaction tools."[11] An additional feature observed by the study is that shorter redactions are more readily undone using this method. While rasterized PDFs are not immune to this approach, the report indicates that they are less vulnerable than non-rasterized redactions.[12]

25. Because the segregability requirement of FOIA mandates that agencies make the smallest redactions necessary to preserve the information-equity that justifies the redaction, there is a heightened risk with non-rasterized records of redactions that are vulnerable to the approach described above. The foregoing study also notes that existing and future machine learning artificial intelligence models "may significantly increase the efficacy of deredaction attacks, particular in the case of wider redacted text sessions composed of multiple words."[13]

Signed this 31st day of August, 2026
Arlington, Virginia

KERRY T CALLAHAN
Digitally signed by KERRY T CALLAHAN
Date: 2026.08.31 16:18:52 -04'00'

Kerry Callahan
Acting FOIA Officer
Transportation Security Administration

[11] *Id*. at 45.
[12] *Id.* at 53.
[13] *Id.* at 54.