**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAI,<br><br>*Plaintiff*<br><br>v.<br><br>TRANSPORTATION SECURITY ADMINISTRATION,<br><br>*Defendant* | Civil Action No. 14-0403 (RDM) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rules of Civil Procedure 56(b) and Local Civil Rule 7(h), Plaintiff respectfully submits the following Response to Defendant Transportation Security Administration's ("TSA") Statement of Material Facts As To Which There Is No Genuine Dispute.

**TSA ¶ 1**: Plaintiff submitted a FOIA request dated March 15, 2013, broadly seeking all TSA policies and procedures not already posted in the TSA's electronic reading room, assigned 2015- TSLI-00004 ("Policies Request"). *See* ECF No. 99-3 at 25–28.

**RESPONSE**: Undisputed.

**TSA ¶ 2**: The only remaining outstanding issue in this case is whether the TSA must format records produced in response to Plaintiff's Policies Request as fully digital text PDFs rather than scans or rasterizations. *See* Joint Status Report, ECF No. 253 (May 21, 2026); *see also Sai v. Transp. Sec. Admin.*, 466 F. Supp. 3d 35, 49 (D.D.C. 2020) ("Sai *II*").

**RESPONSE**: Disputed. Plaintiff agrees that a remaining outstanding issue in TSA's Renewed Motion for Summary Judgment is whether the TSA is obligated to produce the Policy Documents as non-rasterized PDFs. Plaintiff also is seeking a declaratory judgment related to TSA's policy of formatting documents and all other just remedies. *See* Compl. ¶¶ 239–41.

**TSA ¶ 3**: The TSA has already produced all records responsive to Sai's Policies Request. *Sai v. Transp. Sec. Admin*, 315 F. Supp. 3d 218, 236 (2018) ("*Sai I*").

**RESPONSE**: Disputed. E-FOIA creates an obligation for agencies to produce responsive records in any requested form or format that is readily reproducible. *See* 5 U.S.C. § 552(a). As TSA admits, TSA has not produced the documents in the format requested by Plaintiff. *See* Callahan Decl. ¶ 7; *cf. Armstrong v. Executive Office of the President*, 810 F.Supp. 335, 342 (D.D.C. 1993) (explaining meaningful difference in form).

**TSA ¶ 4**: TSA's current FOIA processing system, SecureRelease, does not have the capability to process and produce records as fully digital text PDFs; as such, TSA does not have the technical feasibility to readily reproduce the records at issue in this case. Callahan Decl. ¶ 7.

**RESPONSE**: As this Court has ruled: "There is no question that the TSA had the technical capacity to format the records in the manner requested; indeed, that is how the records were originally formatted and used by the agency. For obvious reasons, the TSA does not contest this point." *Sai*, 315 F. Supp. 3d at 239. Further, Plaintiff disputes that it is not technically feasible for the TSA to produce the records at issue as non-rasterized PDFs and that TSA could not do so readily. *See* Ackert Decl. ¶ 14. It is immaterial whether TSA's current FOIA processing system has the capacity to produce fully digital text PDFs. *See Sai II*, 466 F. Supp. 3d at 50 (explaining that changes to an agency's usual protocols do not excuse E-FOIA compliance).

**TSA ¶ 5**: In order to reproduce the records gathered in response to the Policies Request in as non-rasterized PDFs, TSA would have to return to the records collected, identify those designated as responsive, and then generate a non-rasterized PDF version for each document for further processing. Callahan Decl. ¶ 8.

**RESPONSE**: Disputed that TSA would be required to "identify those documents designated as responsive." TSA already has identified the documents that are responsive to Plaintiff's request.

**TSA ¶ 6**: The TSA is not certain that Adobe Acrobat Pro would be able to produce the requested documents in a non-rasterized format because it does not regularly use this software to process FOIA requests. . Callahan Decl. ¶ 7.

**RESPONSE**: Disputed. Adobe Acrobat Pro is technically capable of redacting documents in non-rasterized format. *See* Ackert Decl. ¶ 14.

**TSA ¶ 7**: FOIA Branch currently has 5 analysts available to perform FOIA intake, tasking, review, and processing. Callahan Decl. ¶ 12.

**RESPONSE**: Immaterial to the issues presented.

**TSA ¶ 8**: The five FOIA analysts are available during standard 40-hour workweeks, and are typically at the I-band salary level, which is equivalent to the GS-13 salary level. Using the middle of the I-band (Step 5), the cost of an hour of FOIA analyst time thus is approximately $66.14. *Id.* .

**RESPONSE**: Undisputed.

**TSA ¶ 9**: FOIA Branch currently has more than 4000 pending requests. Typically, FOIA Branch receives 43 new FOIA requests per week. *Id.* ¶ 13.

**RESPONSE**: Immaterial to the issues presented. *Sai I*, 315 F. Supp. 3d at 240 (explaining that Congress's goals under E-FOIA "would be easily frustrated if an agency could reject a request to release records in a particular format simply on the ground that releasing the records in that format would make the FOIA review process more difficult").

**TSA ¶ 10**: Currently, intake and tasking of a FOIA request typically requires an hour or more of analysts' time. Callahan Decl. ¶ 12.

**RESPONSE**: Immaterial. Plaintiff does not present a new FOIA request; therefore there is no additional burden associated with intake and tasking.

**TSA ¶ 11**: To generate non-rasterized PDFs for the Policies Request outside of FOIA Branch's normal processing steps, TSA would need to assign at least 1 analyst and that analyst would need to undergo training and also engage in various steps to identify a responsive record and correlate it back to a source document, and then convert that source document to a non-rasterized PDF (assuming a native or non-rasterized original record exists). *Id.* ¶¶ 14–15.

**RESPONSE**: Disputed. Specialized training is not necessary to reapply existing redactions already identified in Adobe Acrobat, which is a standard process. *See* Ackert Decl. ¶ 13. No additional work would be required to identify responsive records that already have been collected and identified. *Sai I*, 315 F. Supp. 3d at 240 (explaining that Congress's goals under E-FOIA "would be easily frustrated if an agency could reject a request to release records in a particular format simply on the ground that releasing the records in that format would make the FOIA review process more difficult").

**TSA ¶ 12**: Once non-rasterized versions of the responsive records have been created, TSA will have to process the records, manually applying redactions on a page-by-page basis to each record. Callahan Decl. ¶ 16.

**RESPONSE**: Disputed in part. Adobe Acrobat can apply bulk redactions across pages. *See* Ackert Decl. ¶ 15a. Undisputed but immaterial that TSA will need to process the records and apply redactions. *Sai I*, 315 F. Supp. 3d at 240 (explaining that Congress's goals under E-FOIA "would be easily frustrated if an agency could reject a request to release records in a particular

format simply on the ground that releasing the records in that format would make the FOIA review process more difficult").

**TSA ¶ 13**: In response to the Policies Request, TSA produced 3039 pages that were Released in Part (RIP), which means each of these pages will have to be re-produced. Callahan Decl. ¶ 16.

**RESPONSE**: Undisputed that TSA previously identified and produced 3039 pages with redactions following Plaintiff's Policy Request. Disputed to the extent the TSA characterizes that production as satisfying Plaintiff's request or any subsequent production as a "re-production." The prior production did not satisfy Plaintiff's request for documents to be produced in a non-rasterized format.

**TSA ¶ 14**: The processing of transferring redactions applied to each of these 3039 pages to the corresponding page of the newly generated version(s) is estimated to involve 506.5 hours of analyst time, with an overall estimated cost of $33,500 for initial processing of the newly generated versions of the records at issue. *Id.*

**RESPONSE**: Disputed. TSA's "estimate" of 10 minutes per page is not reasonable. *See* Ackert Decl. ¶ 15.a (estimating one hour per document to apply redactions). TSA's declaration provides no justification for this estimate and Callahan has no stated expertise. Further, even if producing the documents in this format would impose an incremental burden, that is not a basis for avoiding the requirements of E-FOIA. *Sai I*, 315 F. Supp. 3d at 240 (explaining that Congress's goals under E-FOIA "would be easily frustrated if an agency could reject a request to release records in a particular format simply on the ground that releasing the records in that format would make the FOIA review process more difficult."). TSA does not state how long redactions would

take using SecureRelease and assumes any time spent complying with Sai's request constitutes a significant burden.

**TSA ¶ 15**: The process of transferring redactions made in SecureRelease to the corresponding page in a new version of the same record is complicated by the need to annotate the redaction in the new document with the type of redaction it is (i.e., which FOIA exemption it is based on) and thus time-consuming. Callahan Decl. ¶ 16.

**RESPONSE**: Disputed and immaterial. Identifying the basis for the redaction is standard process that TSA employs and thus it results in no incremental burden. *Sai I*, 315 F. Supp. 3d at 240 (explaining that Congress's goals under E-FOIA "would be easily frustrated if an agency could reject a request to release records in a particular format simply on the ground that releasing the records in that format would make the FOIA review process more difficult.")

**TSA ¶ 16**: Because this effort would entail a new process that FOIA Branch's analysts are unfamiliar with, and the volume of the effort along with its repetitive nature necessarily introduces opportunities for mistakes, it will be necessary for FOIA Branch to conduct a quality-control assessment of the re-processing effort described above. Callahan Decl. . ¶ 17.

**RESPONSE**: Disputed that FOIA analysts are unfamiliar with using Adobe Acrobat to apply redactions, which is a standard feature. *See* Ackert Decl. ¶ 13. Disputed that using Adobe Acrobat to apply redactions is a "new" process for TSA, *see* TSA, TSA Management Directive 1400.17 Document Redaction (effective October 5, 2010) (requiring "Authorized Redactors" to "[p]erform[ ] redaction using the latest version of the *Adobe® Acrobat® Professional*"); TSA, TSA Management Directive 1400.22 Paperwork Reduction Act Program (effective Nov. 24, 2020) (directing employees "to ensure all TSA revised and new forms are processed as a PDF fillable From through Adobe Acrobat software"), and that using Adobe requires any volume of effort or

undue repetition. *See* Ackert Decl. ¶ 13. Also disputed that the Adobe redaction process requires any additional quality-control assessment beyond ordinary course. *Id.* The risk that a TSA agent may make a mistake in redaction exists with both Adobe and SecureRelease. Finally, even if there were a marginal additional cost, it would be irrelevant under E-FOIA. *Sai I*, 315 F. Supp. 3d at 240 (explaining that Congress's goals under E-FOIA "would be easily frustrated if an agency could reject a request to release records in a particular format simply on the ground that releasing the records in that format would make the FOIA review process more difficult.")

**TSA ¶ 17**: FOIA Branch reviewers would need to devote on average the equivalent of five minutes per page towards ensuring that the redactions were properly transferred, annotated, and applied via Adobe Acrobat's built-in redaction function, totaling 253.25 hours of time. *Id.*

**RESPONSE**: Disputed. *See* Callahan Decl.¶ 17. Immaterial insofar as this process would be the same across any redaction software tool. *Sai I*, 315 F. Supp. 3d at 240 (explaining that Congress's goals under E-FOIA "would be easily frustrated if an agency could reject a request to release records in a particular format simply on the ground that releasing the records in that format would make the FOIA review process more difficult.")

**TSA ¶ 18**: The quality-control assessment effort would therefore entail an expense of $16,750. *Id.*

**RESPONSE**: Disputed. *See* Callahan Decl. ¶ 17; Ackert Decl. ¶ 15a.

**TSA ¶ 19**: In total, generating non-rasterized PDFs for the Policies Request using TSA's existing access to Adobe Acrobat would require approximately 760 hours of effort, with a cost value of at least $50,596. *Id.* ¶ 18.

**RESPONSE**: Disputed. *See* Ackert Decl. ¶ 15a. Even if there were a marginal additional cost, it would not justify violation of E-FOIA. *Sai I*, 315 F. Supp. 3d at 240 (explaining that

Congress's goals under E-FOIA "would be easily frustrated if an agency could reject a request to release records in a particular format simply on the ground that releasing the records in that format would make the FOIA review process more difficult.")

**TSA ¶ 20**: TSA has significant security concerns with using Adobe Acrobat or another software the agency is less familiar with to process the requested documents because redactions containing Sensitive Security Information ("SSI") could be compromised. Callahan Decl. ¶ 19.

**RESPONSE**: Disputed and immaterial. *See* Ackert Decl. ¶ 15. TSA has not identified any reasonable security concerns associated with the documents at issue or redactions using Adobe Acrobat. TSA is familiar with Adobe Acrobat.

**TSA ¶ 21**: SecureRelease ensures that various forms of latent data or metadata in the PDF that could be used to shed light about the text that has been redacted, despite the proper application of a redaction, is eliminated from the document before release. Callahan Decl. ¶ 20.

**RESPONSE**: Immaterial. Current versions of Adobe Acrobat likewise redact all sensitive information. *See* Ackert Decl. ¶ 15b–c.

**TSA ¶ 22**: A non-rasterized PDF retains additional forms of data that could shed light about the text behind a redaction on a page, even when redactions are applied to that text. Callahan Decl. ¶ 20.

**RESPONSE**: Disputed. Retained metadata would not shed any light on the substance of the redacted information. *See* Ackert Decl. ¶ 15b–c. There is no legitimate security concern. *Id.*

**TSA ¶ 23**: Because FOIA does not allow for the modification of an original document for production purposes, any alternative method for protecting information that must be withheld must be as secure as possible. Callahan Decl. ¶ 23.

**RESPONSE**: Disputed and immaterial. *See* Callahan Decl. ¶ 23. TSA has identified no meaningful security risk at issue in the requested documents using Adobe. Plaintiff notes this statement attempts to state a legal conclusion about what FOIA does and does not allow and is not a "fact." Plaintiff also notes that the phrase "as secure as possible" is vague and ambiguous. Undisputed there are alternative methods for protecting sensitive information outside SecureRelease.

**TSA ¶ 24**: Because the segregability requirement of FOIA mandates that agencies make the smallest redactions necessary to preserve the information-equity that justifies the redaction, there is a heightened risk with non-rasterized records of redactions that are vulnerable to the approach described above. *Id.* ¶ 25.

**RESPONSE**: Disputed and immaterial. Plaintiff disputes that there are any security risks in the at issue documents. *See id*. ¶ 2. Plaintiff does not agree "there is a heightened risk with non-rasterized records of redactions" nor do they understand any association with FOIA's segregability requirement. Plaintiff notes this statement contains an impermissible legal conclusion. Undisputed that TSA must make the smallest redactions necessary.

Dated: October 5, 2026

Respectfully submitted,

/s Claire Homsher
Claire Homsher
Paul J. Zidlicky
Avery D. Gerdes
SIDLEY AUSTIN LLP
1501 K St., NW Ste. 600
Washington, DC 20005
chomsher@sidley.com
+1 (202) 736 8661