**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SAI,

*Plaintiff*

v.

TRANSPORTATION SECURITY ADMINISTRATION,

*Defendant*

Civil Action No. 14-0403 (RDM)

**PLAINTIFF'S OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

Date: October 5, 2026

By: */s/ Claire Homsher*

Claire Homsher
Paul J. Zidlicky
Avery D. Gerdes
SIDLEY AUSTIN LLP
1501 K St., NW Ste. 600
Washington, DC 20005
chomsher@sidley.com
+1(202)736-8000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION AND SUMMARY ..........................................................................1

BACKGROUND ..........................................................................................................2

LEGAL STANDARD...................................................................................................4

ARGUMENT ...............................................................................................................5

I. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE POLICY DOCUMENTS ARE READILY REPRODUCIBLE AS NON-RASTERIZED PDFS......5

A. TSA Does Not Dispute It Is Capable of Producing Non-Rasterized PDFs Using Adobe Acrobat.................................................................................................7

B. TSA Failed to Meet Its Burden To Show That Producing Non-Rasterized PDFs Imposes Significant Burden under E-FOIA...................................................9

II. PLAINTIFF IS ENTITLED TO DECLARATORY JUDGMENT. ..............................13

CONCLUSION...........................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hawkinson v. Immigration and Customs Enforcement*,
554 F. Supp. 3d 253 (D. Mass 2021) ........................................12

*Heartland Alliance for Human Needs & Human Rights v. United States Dep't of Homeland Sec.*,
2019 WL 3412972 (D.D.C. July 29, 2019)........................................12

*Lipton v. United States Environmental Protection Agency*,
316 F.Supp. 3d 245 (D.D.C. 2018) ........................................11

*National Sec. Counselors v. CIA*,
960 F. Supp. 2d 101 (D.D.C. 2013) ........................................2, 11

*Public.Reousrce.org v. United Stated Internal Revenue Service*,
78 F. Supp. 3d 1262 (N.D. Cal. 2015) ........................................9

*Sai v. Transp. Sec. Admin.*,
466 F. Supp. 3d 35 (D.D.C. 2020) ........................................3, 4, 6, 12

*Sai v. Transportation Sec. Admin.*,
315 F. Supp. 3d 218 (D.D.C. 2018) ........................................6, 7, 9, 12, 13

*Sample v. Bureau of Prisons*,
466 F.3d 1086 (D.C. Cir. 2006) ........................................4, 5, 7, 13

*Scudder v. Central Intelligence Agency*,
25 F. Supp. 3d 19 (D.D.C. 2014) ........................................5, 6, 7, 12

*Shapiro v. United States Department of Justice*,
507 F. Supp. 3d 283 (D.D.C. 2020) ........................................13

*Yeager v. Drug Enforcement Administration*,
678 F. 2d 315 (D.C. Cir. 1982) ........................................11

**Statutes and Regulations**

5 U.S.C. § 552(a)(3)(B) ........................................1, 2

Pub. L. No. 104-231, § 2, 110 Stat. 3048 (1996)........................................9

TSA, TSA Management Directive 1400.17 Document Redaction (effective October 5, 2010), available at https://www.tsa.gov/sites/default/files/foia-readingroom/1400.17_document_redaction.pdf ........................................10

TSA, TSA Management Directive 1400.22 Paperwork Reduction Act (effective Nov. 24, 2020), available at https://www.tsa.gov/sites/default/files/foia-readingroom/tsa-md-1400.22-paperwork-reduction-act-program.pdf......................................9

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................................4

**Other Authorities**

Adobe Acrobat Help Webpage, *Redact sensitive content in Acrobat Pro*, available at https://helpx.adobe.com/acrobat/desktop/protect-documents/redact-pdfs/redact.html (last updated Aug. 31, 2026)..........................................................................8

## INTRODUCTION AND SUMMARY

Twelve years ago, Plaintiff requested public records from the Transportation Security Administration ("TSA") be produced related to TSA policies and procedures (the "Policy Request"). Plaintiff sought these records in "electronic, machine processable, accessible, open, and well-structured format to the maximum extent possible," including "fully digital text PDFs [non-rasterized PDFs] rather than scans or rasterizations." Dkt. 172 at 16. Though TSA is obligated to "provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format," 5 U.S.C. § 552(a)(3)(B), TSA has repeatedly and consistently refused to provide the Policy Request documents in the format requested, necessitating years-long litigation including several rounds of summary judgment briefing before this Court. In the Court's last summary judgment order, TSA was granted a final opportunity to demonstrate why it could not provide the Policy Request documents as non-rasterized PDFs. It has failed to do so. Accordingly, summary judgment should be granted to Plaintiff and TSA's request for summary judgment should be denied.

To start, TSA does not contest that it is technically capable of reproducing these documents as non-rasterized PDFs using Adobe's built in redaction tool. *See* Declaration of Julian Ackert ("Ackert Decl.") ¶ 14;[1] TSA Renewed Motion for Summary Judgment and Memorandum in Support Thereof (Gov. Br.), Dkt. 258, Declaration of Kerry Callahan, Dkt. 258-1 (Callahan Decl.) ¶ 9. Nor does its claim of an unreasonable burden hold any weight. TSA asserts that it "has

[1] Julian Ackert is a Senior Managing Director at iDiscovery Solutions, Inc., a consulting firm for computer forensics and electronic discovery. *See* Ackert Decl. ¶ 1. Ackert has a Bachelor of Sciences degree in Computer Science from the University of Virginia and over 25 years of experience in the field. *Id.* ¶¶ 2–3. Plaintiff retained Ackert to address whether TSA could readily reproduce the documents at issue as non-rasterized PDFs. His declaration is attached as Exhibit A to this memorandum.

already produced the records that Sai seeks in this case" while ignoring that it has failed to comply with its obligations under E-FOIA. Gov. Br. 3. TSA asks the Court to approve the very conduct E-FOIA forbids: reliance upon rote application of bureaucratic norms as a basis for avoiding the requirements of E-FOIA. *See id.* at 4–5. It rests on estimates of cost (both in terms of money and time) which are facially unreasonable and, in all events, are materially the same costs TSA would incur to process *any* FOIA request. *Id.* at 5–6. Last, it asserts irrelevant and unsubstantiated security concerns. *Id.* at 7. None satisfies E-FOIA's—or this Court's—command to present specific and compelling evidence of burden as to production in the requested format. Plaintiff is entitled to summary judgment.

## BACKGROUND

In 1996, Congress passed the E-FOIA Amendments, which required public agencies to "enhance public access to agency records and information" and promoted the use of technology "to let requesters obtain information in the form most useful to them." *National Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 202 (D.D.C. 2013) (internal quotation omitted). Specifically, E-FOIA requires agencies to provide requested records "in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B).

In 2013, Plaintiff made FOIA requests on TSA following several incidents in which they allege TSA agents discriminated against them based on a disability. *See* Dkt. 172 at 4–6. Remaining at issue in this litigation is Plaintiff's Policy Request,[2] where Plaintiff sought, among other information, "TSA's policies regarding the treatment of passengers with disabilities." *Id.* at 6. Plaintiff requested these documents as "fully digital text PDFs rather than scans or

[2] Following the Court's most recent summary judgment order, the parties have met and conferred to resolve the other outstanding issues. *See* Dkt. 247.

rasterizations." *Id.* at 16. Non-rasterized PDFs are meaningfully different from rasterized PDFs, both for purposes of accessibility and functionality. *See* Ackert Decl. ¶ 9. For instance, non-rasterized PDFs contain text that can be read and fully navigated by "screen readers and text to speech applications," "text that is searchable," and "images that are fully pixelated, and therefore suffer no image resolution loss when using zoom functionality." *Id.* ¶¶ 10–11. "In contrast, rasterization of a document converts *all* information – text or otherwise – on the document to static images." *Id.* ¶ 11.

Yet, despite Plaintiff's request, TSA produced only rasterized (non-accessible) PDFs. *See* Gov. Br. 3; Callahan Decl. ¶ 7. Production in this format "significantly impaired [Plaintiff's] ability to use the documents, [and] distribute the documents to [their] audience in a format that would be accessible to them (which includes other people with disabilities)." Dkt. 111-2 ¶ 12.

TSA has twice attempted to justify its production of rasterized PDFs. *See* Dkts. 99, 174. In the prior round of briefing, the TSA "reject[ed] the possibility of redacting within digital PDF formats because the TSA is unaware of a secure method of doing so. The [TSA] further state[d] that, if the TSA did not use FOIAXpress, which it normally employs 'as a tracking mechanism for all steps of the FOIA process,' it would have had to process and release the records responsive to [Plaintiff's] request from the 18 offices tasked by 'manually track[ing]' 'parallel compendiums' of 'nearly 5,000 pages of records,' throughout the redaction process, resulting in a 'significant administrative burden on the agency.'" *Sai v. Transp. Sec. Admin.*, 466 F. Supp. 3d 35, 50 (D.D.C. 2020) ("*Sai II*") (citing prior TSA declaration).[3]

[3] Apparently, TSA no longer uses FOIAXpress as its FOIA processing tool. TSA's most recent declaration does not explain the change between FOIAXpress and SecureRelease nor does it explain why, when selecting an alternative FOIA processing tool, it could not have selected a tool capable of producing non-rasterized PDFs. Plaintiff understands the FOIAXpress and

This Court rejected these arguments because "incompatibility 'with the agency's then-existing FOIA processing software'" does not "constitute[] sufficient grounds—without more—for the TSA to decline to comply with its E-FOIA obligations." *Id.* at 15 (quoting *Sai I*, 315 F.Supp. 3d at 240). The Court also noted that TSA's operative declaration (i) was "vague and speculative," (ii) "offer[ed] little detail concerning th[e] burden," and (iii) "does not represent that [TSA] made any effort to explore whether such a [alternative] method exists or to quantify the increased risk of potential countermanding of redactions realized outside of FOIAXpress." *Sai II*, 466 F. Supp 3d at 50–51. Accordingly, the Court offered TSA "a final opportunity to proffer the type of evidence that will permit the Court to determine whether the TSA can 'readily reproduc[e]' the records at issue as fully digital text PDFs rather than scans or rasterizations." *Id.* at 51. The Court directed TSA to "provide the Court with an expert declaration addressing the technical feasibility of the request, the specific *cost* (in dollars) and burdens (in time) of satisfying the request, the extent of the necessary redactions, and the security risks, if any, posed by using Adobe Acrobat, as Sai suggests, . . . or some other software to release redacted, non-rasterized versions of the records at issue." *Id.* (emphasis in original).

TSA's submissions fail to satisfy this burden. As discussed below, TSA's motion for summary judgment should be denied and summary judgment should be awarded to Plaintiff.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). E-FOIA places the burden on the agency to create a genuine dispute that a requestor has asked for the agency to produce documents in a form not "readily reproducible." *See Sample v. Bureau of Prisons*, 466

SecureRelease programs to be functionally equivalent insofar as neither program is capable of producing non-rasterized PDFs. *See* Dkt. 174-3 (Miller Decl.) ¶ 13; Callahan Decl. ¶ 7.

F.3d 1086, 1088 (D.C. Cir. 2006) (remanding to the district court with instructions to enter judgment in favor of plaintiff when it is clear agency can fulfil the formatting request).

> The plain language of 5 U.S.C. § 552(a)(3)(B) [E-FOIA], as confirmed by the DOJ's guidance to agencies regarding compliance with this subsection, requires agencies to provide records in requested formats, which are "readily reproducible" for the agency, whether or not the record is maintained by the agency in that format. . . . When the requester seeks production of responsive records in a format that is different from that in which the records are maintained, the 'readily reproducible' requirement still applies and is informed by the second sentence of the subsection, directing the agency to engage in 'reasonable efforts' to comply.

*Scudder v. Central Intelligence Agency*, 25 F. Supp. 3d 19, 31 (D.D.C. 2014). "[T]he level of effort that would be viewed as 'reasonable' to satisfy an agency's obligation to honor new format requests," is meaningful and includes the "potential for compelled software creation." *Id.* at 31 & n.10. To ignore a requester's stated preferred format, the government must provide "specific, compelling evidence as to significant interference or burden" associated with production of documents in the requested format. *Id.* at 32. "[T]he Court must consider the evidence presented by the parties and determine if, read in light of the opposing party's evidence, either party is entitled to summary judgment because there are no material facts in dispute." *Id.* at 38.

## ARGUMENT

### I. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE POLICY DOCUMENTS ARE READILY REPRODUCIBLE AS NON-RASTERIZED PDFS.

TSA is obligated to produce the documents at issue in the format requested by Plaintiff because they are readily reproducible in that format. *See Sample*, 466 F.3d at 1089. Whether a document is readily reproducible in a specific format depends on the "technical feasibility" and burdens associated with producing in the requested format. *See Scudder*, 25 F. Supp. 3d at 38 (explaining that "when the requested format is an existing format for responsive [documents] within the agency, it would be a 'highly unusual' case where the records would not thereby be

'readily reproducible"); *see also Sai I*, 315 F. Supp. 3d at 239 ("Sai is asking that [TSA] produce [the documents] in their original format.").

In the last round of summary judgment briefing, the Court directed TSA to "provide the Court with an expert declaration addressing the technical feasibility of the request, the *specific* cost (in dollars) and burdens (in time) of satisfying the request, the extent of the necessary redactions, and the security risks, if any, posed by using Adobe Acrobat . . . or some other software to release redacted, non-rasterized versions of the records at issue." *Sai II*, 466 F. Supp. 3d at 51. TSA's most recent declaration fails to show that the documents are not "readily reproducible" in a non-rasterized format.

There is no genuine dispute that Adobe Acrobat is an available tool that can create non-rasterized PDFs that include any necessary redactions. *See* Callahan Decl. ¶ 9 ("This Declaration assumes that processing the source documents in Adobe Acrobat using that program's built-in functionality would end with Adobe Acrobat generating a non-rasterized PDF[.]"); Ackert Decl. ¶ 14 ("The TSA documents at issue are therefore reproducible as non-rasterized PDFs[.]"). TSA does not dispute its technical ability to redact and produce non-rasterized PDFs via Adobe Acrobat. Instead, TSA claims it should not be required to comply with E-FOIA's form-or-format requirement based on the burden that producing non-rasterized documents would have on the agency. But the burdens TSA articulates are materially the same as those an agency must bear to comply with any FOIA request. That TSA has already spent money and time producing documents as "scans or rasterizations" in a format that does not satisfy Plaintiff's FOIA requests does not relieve TSA of its independent obligation under E-FOIA to "provide records in requested formats," which are "readily reproducible" and "whether or not the record is maintained by the agency in that format." *Scudder*, 25 F. Supp. 3d at 38. Nor is it sufficient that Plaintiff's request would

require TSA to deviate from its normal procedure for applying redactions. *Id.* "Since the records sought by [Plaintiff] are 'readily reproducible' under the statute, [TSA] must produce them" in the [requested] format. *Sample*, 466 F.3d at 1089; *see* Ackert Decl. ¶ 14. Sai is entitled to summary judgment.

### A. TSA Does Not Dispute It Is Capable of Producing Non-Rasterized PDFs Using Adobe Acrobat.

As to technical feasibility, this Court already has concluded that "[t]here is no question that the TSA ha[s] the technical capacity to format the records in the manner requested." *Sai v. Transportation Sec. Admin.*, 315 F. Supp. 3d 218, 239 (D.D.C. 2018) ("*Sai I").* Further, as explained by Mr. Ackert, numerous "commercial off the shelf applications . . . can apply redactions and create redacted *non-rasterized* PDF documents," including Adobe Acrobat. Ackert Decl. ¶ 12. Paragraphs 9, 15, and 16 of the Declaration of Kelly Callahan explain the process by which TSA can apply redactions with Adobe Acrobat for the discrete subset of documents TSA already identified as responsive to Plaintiff's Policy Request: TSA would (1) "return to the records collected, identify those designated as responsive, and then generate a non-rasterized PDF version for each document;" then (2) apply redactions using Adobe Acrobat's "built-in functionality." Callahan Decl. ¶¶ 8–9. The process of applying redactions in Adobe is likewise straightforward:

1. Select **All tools** > **Redact a PDF**.
2. From the left pane, select **Redact text and images**.
3. Select and drag the cursor over the text or image.
4. Select **Apply** from the left pane.
5. In the dialog box that opens, choose if you want to sanitize and remove hidden information by selecting the toggle button.
6. Select **Continue**.
7. Enter the filename and location in the **Save Sanitized Document** dialog box.
8. Select **Save**.

Ackert Decl. ¶ 13 (providing screenshot from Adobe Acrobat Help Webpage, *Redact sensitive content in Acrobat Pro*, available at https://helpx.adobe.com/acrobat/desktop/protect-documents/redact-pdfs/redact.html (last updated Aug. 31, 2026)). Adobe includes "built-in code sets for U.S. FOIA. . . compliance." *Id.* ¶ 14.

TSA's only response is to recycle the same feasibility argument advanced in TSA's declaration from the last round of summary judgment briefing that this Court already rejected: "TSA's current FOIA processing system, Secure Release, does not have the capability to process and produce records as fully digital text PDFs. As such, TSA does not have the technical ability to readily reproduce the records that remain at issue in this case." Callahan Decl. ¶ 7. But TSA ignores that Adobe Acrobat is able to produce records in the format requested by Plaintiff. *See* Ackert Decl. ¶ 14. Callahan, now the third FOIA Officer to submit a declaration in this case, provides no new information on technical feasibility and nowhere disputes that TSA can use Adobe Acrobat to produce the Policy Documents as non-rasterized PDFs. Nor does TSA provide any declaration from an "expert" qualified to speak on the technical questions posed. *See* Callahan Decl. ¶ 1 (describing her qualifications as Acting Freedom on Information Officer for the TSA).

**B. TSA Failed to Meet Its Burden To Show That Producing Non-Rasterized PDFs Imposes Significant Burden under E-FOIA.**

1. The Court previously ruled that TSA was required to show that "Sai's format request posed a 'significant interference or burden' beyond increased FOIA-processing costs." *Sai I*, 315 F. Supp. 3d at 240. The Court further explained that "Congress's goals of 'improv[ing] public access to agency records,' Pub. L. No. 104-231, § 2, 110 Stat. 3048 (1996), and 'maximiz[ing] the usefulness of agency records,' *id*., would be easily frustrated if an agency could reject a request to release records in a particular format simply on the ground that releasing the records in that format would make the FOIA review process more difficult." *Id.* Under these standards, the evidence submitted by TSA fails to assert a significant burden within the meaning of E-FOIA. TSA has twice been afforded the opportunity to present evidence demonstrating significant burden.[4] TSA has yet again failed to do so, erroneously "relying [only] on its own prior practices that are inconsistent with the E–FOIA amendments." *Public.Reousrce.org v. United Stated Internal Revenue Service*, 78 F. Supp. 3d 1262, 1266 (N.D. Cal. 2015) ("That the IRS will have to develop new protocols and train staff to respond to [plaintiff's] request does not somehow excuse its need to comply with E-FOIA.").

2. Further, even if increased difficulty could justify disregard of E-FOIA's requirements, TSA comes nowhere close to meeting that burden. To start, TSA already has Adobe Acrobat already. *See* TSA, TSA Management Directive 1400.22 Paperwork Reduction Act Program (effective Nov. 24, 2020), available at https://www.tsa.gov/sites/default/files/foia-

[4] As explained *supra* in its prior briefing, FOIA Officer Teri Miller stated that "[t]o have produced the records . . . as fully digital, non-rasterized PDFs would have required processing outside of FOIAXpress and outside of the SSI Program Office's required standards. To do so would have created significant interference with and burden on the agency." Dkt. 174-3 at 5. The court did not find this sufficient and accordingly "provide[d] the agency with a final opportunity to proffer the type of evidence that will permit the Court to determine whether the TSA can 'readily reproduc[e]' the records at issues as fully digital text PDFs."

readingroom/tsa-md-1400.22-paperwork-reduction-act-program.pdf (directing employees "to ensure all TSA revised and new forms are processed as a PDF fillable Form through Adobe Acrobat software"). TSA has previously used the Adobe Acrobat software to process and redact documents: In 2010, TSA directed Authorized Redactors to "[p]erform[] redaction using the latest version of the *Adobe® Acrobat® Professional*." TSA, TSA Management Directive 1400.17 Document Redaction (effective October 5, 2010), available at https://www.tsa.gov/sites/default/files/foia-readingroom/1400.17_document_redaction.pdf. Adobe has built in redaction functionality that would satisfy Plaintiff's request and includes instructions to users on how to do so. *See* Ackert Decl. ¶ 13; Callahan Decl. ¶ 9. Accordingly, there would be no substantial burden in identifying, procuring, or using Adobe to process Plaintiff's request.

3. TSA's arguments to the contrary are without merit. *First*, TSA "estimates Plaintiff's request would cost the agency around $50,596." Gov. Br. 6. That estimate vastly overstates the time and cost necessary to spend redacting the 3039 pages at issue. *See* Ackert Decl. ¶ 15a (estimating $3500 cost). TSA estimates ten minutes *per page* to apply redactions. This is not reasonable. *See id. Second*, TSA's estimate includes costs associated with production of the documents, rather than identifying those costs specific to production in Plaintiff's requested format, even assuming such costs could justify avoiding the requirements under E-FOIA. For example, TSA estimates it will cost $33,500 in labor costs to apply redactions to the documents at issue. *See* Callahan Decl. ¶ 16. TSA neglects that the labor associated with redaction is *not* dependent on Plaintiff's request for a particular format but was necessary for the processing of the FOIA request in the first instance. It is no excuse that TSA incurred these costs once before in their original, non-compliant production. Nor does it matter for E-FOIA that TSA has other

requests it must process. *Contra* Callahan Decl. ¶ 13. TSA identifies no substantial difference between the proposed redaction process and the existing SecureRelease process (or the TSA's previous FOIA redaction tool, FOIAXpress), *see* Dkt. 174-3 (previous TSA declaration describing limitations of FOIAXpress), or the manual pen-and-paper redaction process for that matter).[5] *Third*, TSA includes an unnecessary "quality-control" cost of $16,750 (assuming five minutes per page over and above the ten minutes spent applying redactions). Again, this is not reasonable. *See* Ackert Decl. ¶ 15.a; *see Nat'l Sec. Couns. v. C.I.A.*, 960 F. Supp. 2d 101, 205 (D.D.C. 2013) (rejecting agency's assertion that "labyrinthine steps . . . are necessary" to comply with plaintiff's request, including "a second line-by-line review"). *Fourth*, the TSA grasps at generalized and inapposite security concerns. *See* Ackert Decl. ¶ 15b–c. But the TSA identifies no security risks associated with the specific documents Plaintiff has requested and "[c]urrent versions of Adobe Acrobat include built in functionality to redact . . . sensitive information." *Id*. "[R]edactions that are applied appropriately using current versions of Adobe Acrobat are typically secure." *Id.* ¶ 14. TSA has failed to demonstrate a significant burden within the meaning of E-FOIA to justify TSA's failure to provide the documents to Sai in the format requested.

TSA's contrary argument would render E-FOIA a dead letter: "[P]rocessing as [Plaintiff requests] would be out of the ordinary course of business, which the agency is not required to do." Gov. Br. 4 (citing *Hawkinson v. Immigration and Customs Enforcement*, 554 F. Supp. 3d 253, 272

[5] Elsewhere, TSA suggests Plaintiff's request requires the TSA to create new records. That too is wrong. "[T]here is a fundamental difference between redacting information from an extant document and creating new information that did not exist when a FOIA request was made." *Lipton v. United States Environmental Protection Agency*, 316 F.Supp. 3d 245, 254 (D.D.C. 2018). Plaintiff requests the former so there is no reasonable objection based on the creation of new records. *See Yeager v. Drug Enforcement Administration*, 678 F. 2d 315, 321 (D.C. Cir. 1982) ("The argument that a document with some information deleted is a 'new document,' and therefore not subject to disclosure, has been flatly rejected.").

n.5 (D. Mass 2021)). This is wrong. And this Court has held the purposes of E-FOIA "would be easily frustrated if an agency could reject a request to release records in a particular format simply on the ground that releasing the records in that format would make the FOIA review process more difficult." *Sai* I, 315 F. Supp. 3d at 240*; see also Public.Resource.org*, 78 F. Supp. 3d at 1266–67 (same). Indeed, TSA's reliance on *Hawkinson* is misplaced because it undercuts the TSA's own assertions regarding feasibility. In that case, Defendants denied their ability to produce native format documents because "they 'can only process documents to apply redactions in either Adobe PDF or a software program called FOIAxpress." *Hawkinson*, 554 F. Supp. 3d at 272 n.5. Here, too, TSA can readily apply redactions in Adobe.

4. Finally, even if TSA were unable to apply the normal Adobe redaction process (and it is able to do so), TSA could satisfy Plaintiff's requests by producing electronic versions of native documents, *e.g.* Microsoft Word .docx files. As previously noted by this Court, Plaintiff requested the at issue Policy Documents to be released electronically as discrete documents, *Sai II*, 466 F.Supp. 3d at 47 n.4, and "left the precise choice of electronic format for the policies request partially up to the agency," so long as they were "in an electronic, machine-processable, accessible, open, and well-structured format to the maximum extent possible." Dkt. 184 at 8 & n.2. In other words, the "form or format" Plaintiff requested for the Policy Documents is "electronic, machine-processable, accessible, open, and well-structured format to the maximum extent possible." *Id.* And, "[w]here a FOIA request seeks records in an existing format, such request "should not be frustrated due to the agency's decision to adopt a production process that nonetheless renders release in that format highly burdensome." *Scudder v. Central Intelligence Agency*, 25 F.Supp. 3d 19, 43 (D.D.C. 2014). "[W]hen the requested format is an existing format for responsive records within the agency, it would be a 'highly unusual' case where the records would not thereby be

'readily reproducible.'" *Id. at 38*; *see also Heartland Alliance for Human Needs & Human Rights v. United States Dep't of Homeland Sec.*, 2019 WL 3412972, at *3 (D.D.C. July 29, 2019) (ordering DHS to produce records in their native format when requestor requested records that "can be accessed, searched, and displayed").

The documents at issue are readily reproducible as non-rasterized documents via multiple pathways. *See* Ackert Decl. ¶ 14. Having failed to present evidence of a cognizable "significant burden," Plaintiff is entitled to summary judgment. *See Sample*, 466 F.3d at 1089.

## II. PLAINTIFF IS ENTITLED TO DECLARATORY JUDGMENT.

In addition to the release of the requested documents in accordance with E-FOIA, Plaintiff has also requested (i) a declaration "that TSA has a pattern and practice of violating the FOIA," (ii) an order to "[p]ermanently enjoin TSA from further violations of the FOIA," and (iii) "such other and further relief as the Court may deem just and proper." Compl. ¶¶ 239–41. Accordingly, Plaintiff asks this Court to declare the TSA's current policy with respect to rasterization and redactions a violation of E-FOIA.

Courts may "grant declaratory relief when they find that an agency has a policy or practice that violates FOIA, so long as there is at least some chance that the agency might continue to apply the policy in the future." *Shapiro v. United States Department of Justice*, 507 F. Supp. 3d 283, 336 (D.D.C. 2020). Here, the TSA has "asserted [a] broader categorical policy" of creating and rasterizing PDFs of any sensitive responsive document, notwithstanding a requestor's request for a specific format. *See* Dkt. 118-1 ¶¶ 8–12. As described in Section I, *supra*, TSA simply cannot support this policy. *See* Ackert. Decl. ¶¶ 14–15. TSA's policy of producing redacted documents only in rasterized PDF format violates E-FOIA and should be declared unlawful. *See Sai I*, 315 F. Supp. 3d at 238 ("Assessing both the 'technical feasibility' of a proposed format and the burden

that would be imposed on the agency is necessarily a fact-dependent inquiry") (quoting *Scudder*, 25 F. Supp. 3d at 31).

Where a requestor seeks "accessible" and "machine-processable" documents, it is a violation of E-FOIA to produce only rasterized PDFs. Because TSA indicates it will continue to do so absent court intervention, declaratory relief is warranted.

## CONCLUSION

Plaintiff has provided the TSA with a step-by-step proposal on how to redact and release the at issue Policy Documents in a non-rasterized format. Because TSA is technically able to comply and has failed to show a cognizable substantial burden, the documents at issue are "readily reproducible" as non-rasterized PDFs. Sai is entitled to summary judgment and all other just remedies. For the same reasons, TSA's motion should be denied.

Dated: October 5, 2026

Respectfully submitted,

/s Claire Homsher
Claire Homsher
Paul J. Zidlicky
Avery D. Gerdes
SIDLEY AUSTIN LLP
1501 K St., NW Ste. 600
Washington, DC 20005
chomsher@sidley.com
+1 (202)736-8000